**COPELAND et ux. v. MASSIE et al.**

No. 6032.

Court of Civil Appeals of Texas. Amarillo.

Feb. 27, 1950.

Rehearing Denied March 27, 1950.

Ratliff & Conner, Spur, Stapleton & Jones, Floydada, for appellants.

Martin & Martin, Wichita Falls, Bain & Bain, Floydada, Lucian Morehead, Plainview, for appellees.

PITTS, Chief Justice.

This suit was originally filed by appellants, H. A. Copeland and wife Lois Copeland, against W. M. Massie. Service was had upon him and he answered in the cause. Thereafter on January 22, 1949, W. M. Massie died intestate and subsequently thereto appellants filed an amended petition making appellees, Lela M. Massie, the surviving widow of W. M. Massie, deceased, W. A. Massie and Geraldine Massie Murray, his two surviving children, party defendants and the sole and only heirs at law of W. M. Massie, deceased, upon whose estate there was no administration. Upon a hearing before the trial court appellees' special exception number one, alleging that appellants pleaded no cause of action against them, was sustained. After the refusal of appellants to amend their pleadings, the trial court dismissed the cause of action from which an appeal has been perfected to this court. The appeal is predicated upon one point of error charging that appellants did allege a cause of action against appellees and that the trial court erred in holding the contrary to be true and in dismissing their case.

Appellants alleged that their cause of action arose against W. M. Massie on July 10, 1948, before his death on January 22, 1949. Appellants pleaded that they and W. M. Massie and wife, Lela M. Massie, lived in Floydada, Floyd County, Texas, where W. M. Massie had for many years been engaged in the real estate business, owned many town lots in Floydada at various times, which lots were offered for sale and were being offered for sale on July 10, 1948; that among the property Massie and his wife owned and had possession of was a tract of 6.65 acres of land situated within the corporate limits of the southwest part of the town of Floydada; that the said tract of land was partially surrounded by residences and business houses in close proximity thereto and bordered by unpaved streets on every side thereof, from each of which the land was clearly visible; that a paved highway connecting Floydada with Ralls and thence to Lubbock ran along and immediately adjacent to the southeast corner of the said tract of land, from which highway the land was clearly visible; that about the year 1931, or at least sometime prior to July 10, 1948, W. M. Massie and his wife, Lela M. Massie, authorized the city officials of Floydada to remove from the said tract of land large quantities of caliche used in improving the streets of Floydada and thus increasing the value of

town lots situated in the said town; that as a result of removing the caliche an open pit was created on the said tract of land 430 feet long and 131 feet wide, ranging from 30 to 50 feet deep with abrupt steep banks on each side and more sloping but steep inclines at the ends thereof; that rainfall in that vicinity filled the pit with muddy water, thus forming a deep and treacherous hole of muddy water, the depth of which could be ascertained only by measurement; that because of such conditions it would be very difficult, if not impossible, to remove a drowning person therefrom or to rescue the body of such a person in sufficient time to restore life by artificial means; that the said open pit containing muddy water constituted a dangerous condition upon the said tract of land for any person but more particularly for minor children who might be attracted there for the purpose of swimming therein; that after rainfalls when the pit was filled or partially filled with water, the children of Floydada did go to the said pit and swim therein all of which was known to W. M. Massie and his wife for a long period of time or should have been known to them by the exercise of ordinary care; that such a condition existed on and shortly prior to July 10, 1948, as a result of the rainfall that partially filled the pit with muddy water; that on the said date H. A. Copeland, Jr., a normal, healthy, robust, minor son of appellants, age fourteen years, one month and eight days, who lived with his parents in Floydada, drowned when he went in swimming in the said pit with other boys. Appellants further pleaded, in effect, that their said son had never had any experience in swimming in such a pit and he did not realize, understand or appreciate the existing dangers of the said pit but was attracted thereto because of the surrounding conditions for the purpose of swimming in the pit; that one of the other boys present attempted to rescue the Copeland boy after his distress became evident and before he sank beneath the surface of the muddy water but his efforts were thwarted by the size and depth of the pit and its abrupt steep banks; that an alarm was given immediately by the other boys present and rescue crews came immediately but the size and depth of the pit, its abrupt steep banks and the muddy condition of the water prevented a recovery of the boy's body in time to restore life by artificial means. They further pleaded, in effect, that W. M. Massie and his wife knew, or by the exercise of ordinary care should have known, that the said pit, when it contained water, attracted children of the town there to swim and that children had resorted there for such a purpose on many occasions throughout the years prior to July 10, 1948, and that Massie and his wife knew, or should have known by the exercise of ordinary care, that the said pit filled or partially filled with water created an unreasonable hazard that might result in death of children who swam therein; that the said pit served no useful purpose to W. M. Massie and his wife and the dangerous hazard could have been eliminated and the danger prevented by a nominal and slight expense to prevent the pit from filling with water but Massie and his wife took no steps to eliminate the said danger but permitted such a dangerous condition to remain on their said land; that by reason of such dangerous existing conditions, W. M. Massie and his wife were guilty of negligence that proximately caused the death of H. A. Copeland, Jr., (a) in that they failed to enclose the said pit with an adequate fence to indicate that the same was private property, (b) in that they failed to place warning signs around the pit evidencing the danger thereof, (c) in that they failed to construct drainage ditches and build dams to prevent the flow of water into the said pit when there was rain. Appellants further pleaded that by reason of the death of their son as a result of the negligence of W. M. Massie and his wife, they had suffered damages in the total sum of $15,424. and they supported such a claim by a plea of the life expectancy of their son.

For the purpose of determining the question here presented, we must assume that all of the allegations made in appellants' pleadings are true. In presenting their special exception passed on and sustained

by the trial court, appellees say, in effect, that, admitting appellants' pleadings are all true, such pleadings, taken as a whole, do not allege a cause of action against appellees for the reason that appellants' said pleadings show that H. A. Copeland, Jr., deceased, was, at the time of his death, a normal, healthy, robust boy fourteen years of age, who voluntarily went upon the land of W. M. Massie, now deceased, as a trespasser and who voluntarily went in swimming there as alleged, where the dangers of drowning were obvious, all of which H. A. Copeland, Jr., was legally presumed to have known and understood because of his age and normality, by reason of which exception alone appellees sought a judgment. Because of an adverse judgment on their pleadings alone, appellants are here complaining that they were wrongfully deprived of their day in court while appellees reply, in effect, that "The question squarely before this court is whether or not a normal, average boy more than fourteen years of age is presumed to understand and appreciate the obvious danger incident to swimming in an open pool of water over his head in depth, so as to bar recovery for his death by drowning under the attractive nuisance doctrine." It will be noted that the record reveals that appellants pleaded that it was a "dangerous pit of water" and do not allege that it was "an open pool of water."

In effect, the trial court's judgment holds that, as a matter of law, appellants' petition states no cause of action against appellees for the reason that (a) the petition shows that the deceased child was a trespasser at the time of his death; (b) a cause of action may not be based upon the drowning of a child in a pit such as is alleged in this case; (c) a normal boy of the age of the deceased was presumed to know and understand the danger of drowning in a pit such as the one in question here, regardless of the alleged special dangers and that because of his age and normality, he assumed the risk of death by drowning when he swam in such a pit.

In their attempt to uphold the trial court's judgment, appellees present an able and extensive review and discussion of the authorities in Texas and other jurisdictions in regard to liability of property owners for death or injuries of children occasioned by some existing dangerous instrumentalities upon their property, but it is our opinion that the latest Texas authority on the questions here presented does not support the contention of appellees and holds contrary to the judgment of the trial court rendered in this case. We refer to the case of Banker v. McLaughlin, reported first in Tex.Civ.App., 200 S.W.2d 699 and affirmed by the Supreme Court in 146 Tex. 434, 208 S.W.2d 843, 847, and other authorities there cited. In that case the cause of action arose in Orange County where a child hardly six years old drowned while playing in a pit filled with water on the premises of H. F. Banker. The existing conditions and circumstances there were very similar to those pleaded by appellants in the case at bar except that the child that drowned in that case was younger than the child that drowned in the case at bar. It appears, however, from a presentation of the law in that case and the authorities there cited that the difference in the ages of the two children does not materially change the application of the law in such cases. In that case the jury found that the pit was attractive to children; that it was dangerous to children and the child that drowned was attracted by the pit, which was the proximate cause of its death. The jury further found that H. A. Banker was negligent in permitting the dangerous attractive pit to remain on his premises and that such negligence was a proximate cause of the child's death; that prior to the date the child drowned, children of tender years played about and swam in the pit and Banker knew it or should have known it by the exercise of ordinary care; that Banker was negligent in failing to enclose the pit with a fence or to fill up the pit or drain it, all of which negligence was a proximate cause of the child's death. The jury exonerated the parents of the child from negligence, found it was not an unavoidable accident and awarded damages against Banker. The trial court rendered judg-

ment accordingly. Upon a remittitur being made, the Court of Civil Appeals affirmed the trial court's judgment and its action was sustained by the Supreme Court.

In that case the Supreme Court gives a very comprehensive discussion of the law governing the facts in such cases. It discusses the "attractive nuisance doctrine", the "trespasser defense" and the "reasonable anticipation of injury" theory of liability. It then gives the following summation: "The following features of the facts and circumstances of the case are determinative of the correctness of the action of the Court of Civil Appeals in affirming the trial court's judgment: (a) the place where the condition was maintained was one upon which the possessor knew or should have known that small children would likely frequent the place and play about it; (b) the condition was one of which the possessor knew, or should have known involved an unreasonable risk of death or serious bodily harm to such children; (c) the child, because of its tender years, did not realize the risk involved in going into the pool; and (d) the utility, if any, to Mr. Banker of eliminating the danger was slight as compared to the probability of injury resulting therefrom."

The court further held that when children of tender years come upon premises by virtue of their unusual attractiveness the legal effect is that of an implied invitation to do so. It appears that all of the usual defenses were urged in that case by appellant Banker, but the Supreme Court in affirming the Court of Civil Appeals overruled all of appellant's points of error holding, in effect, that the law made appellant liable under the facts in the case and cited numerous authorities covering a long period of years in support of the law there enunciated. The court closes its opinion by urging that the well established rules and principles of law governing such cases should be applied with caution and further states that no new rule of liability on the part of occupants of real property is there announced, implying that a summation has been more clearly made there of such rules of law than is found in

the numerous authorities of previous years cited in the opinion.

Among the many authorities cited by the Supreme Court in the Banker-McLaughlin case is found a very able treatise on the subject written in two parts in 1923 by the well known writer and author, John C. Townes, under the title "Liability Arising from Dangerous Premises", 1 Texas Law Review, pp. 1-24 and 389-406. Judge Townes there discusses many rules and principles here involved and cites and discusses several cases in support of such rules, one of which cases is a case in which the opinion was handed down by the Commission of Appeals, approved by the Supreme Court, styled McCoy v. Texas Power & Light Co., Tex.Com.App., 239 S.W. 1105, announced April 5, 1922, reversing the Court of Civil Appeals in an opinion reported in 229 S.W. 623. The Supreme Court likewise cites the McCoy case in the Banker-McLaughlin case.

The McCoy case is similar to the case at bar in many respects, one of which was the death of a fourteen year old boy and another was the question of whether or not the McCoy boy was a trespasser. In the McCoy case a fourteen year old boy was sent on a mission by his father to a tract of ground on which there was standing a large tower holding up heavy copper wires over which heavy currents of electricity were being transmitted by the Power and Light Company in the regular course of its business. The quantity of electricity was so great that it charged the air immediately surrounding the wires. The tower was so constructed as to attract the boy who climbed upon it, and without touching the copper wires themselves came in contact with the air immediately surrounding the copper wires that were surcharged with electricity and was killed. Suit was filed against the Power and Light Company by the boy's father, alleging at length the existing attractive dangerous conditions that constituted negligence on the part of the Power and Light Company. The defendant filed a general demurrer, which was then permissible under the rules of practice. The general demurrer was

sustained by the trial court, from which an appeal was perfected. The trial court's judgment was affirmed by the Court of Civil Appeals, which held that the boy was a trespasser and that the Power and Light Company was not therefore liable on the grounds of maintaining an attractive nuisance. The Commission of Appeals, with the approval of the Supreme Court, reversed both courts and remanded the cause for a trial on the merits, holding that the rule announced by the Court of Civil Appeals was applicable in a limited way to adults "but not the rule to be applied to children of tender years." The court there recognized a fourteen year old boy to be a child "of tender years" who would not be classed as an adult. The facts in that case are different from the facts in the case at bar but the principles of law there applied are similar to the principles of law governing the alleged cause of action in this case. It may also be observed that the function or purpose of a general demurrer then permitted under the rules of practice was about the same as appellees' special exception number one in the case at bar in that each charged that, admitting all of the pleadings to be true, plaintiffs had still failed to allege a cause of action. There is likewise little, if any, difference in the rules governing the application of a general demurrer under the old practice as compared with the rules applicable to a special exception such as appellees filed in the case at bar.

In his treatise of the subject heretofore mentioned and cited by the Supreme Court in support of its holdings in the Banker-McLaughlin case, Judge John C. Townes says:

"Should not then consituted authority say to those who own lands within its territory, you must use ordinary care not to put your property in such condition or knowingly suffer it to remain in such condition as to be a real menace of serious, needless and easily preventable hurt to persons whose presence upon it can be reasonably anticipated?

\. \* \* \* \* \* \* \. \.

"An owner or occupier of land must use such care as a man of ordinary prudence would use under the circumstances to prevent serious hurt to others because of the dangerous condition of his premises when such condition is known to him and may be remedied or guarded against readily and with reasonable cost, when the presence of other persons and their exposure to such hurt may reasonably be anticipated.

\* \* \* \* \* \*

"\* \* \* I see nothing unjust or against public policy in holding him to the duty of ordinary care for others exposed to hurt by the condition of his property, whether such condition is natural or is due to his affirmative conduct."

A very able treatise was written in November, 1948, by Professor Leon Green, an able law professor of the University of Texas, on the subject of "Landowners' Responsibility to Children" found in Texas Law Review, Volume 27, No. 1, pp. 1-13. The principles of law enunciated by the Supreme Court in the Banker-McLaughlin case are there discussed at length with approval. The principles of law reiterated by the Supreme Court in the said case were likewise ably discussed with approval in the summer of 1948 in Baylor Law Review, Volume 1, No. 1, pp. 73-75, subject "Recent Decisions" and an able discussion is likewise found in Southwestern Law Journal, Volume 3, No. 1, pp. 78-84, written in the winter of 1949 on the subject of "Banker v. McLaughlin—A Return to the Principles of the First 'Turntable' Case". Such articles are not controlling but they present able discussion of the law here involved and certain portions of these discussions are very persuasive.

In support of its holding in the Banker-McLaughlin case the Supreme Court further cites Restatement of the Law of Torts, Sec. 339, which provides that a possessor of land is subject to liability for bodily harm done to young children trespassing thereon caused by a structural or other artificial condition which he maintains upon the land, if the possessor knows or should know that such children are likely

to trespass on the said land at the said place, and if the condition is one of which the possessor knows or should know involves an unreasonable risk of death or serious bodily injury to such children, and if the children, because of their youth, do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and if the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein. It is our opinion that all of the foregoing elements were, in effect, pleaded by appellants in the case at bar.

Section 283e of the same text provides that:

"A child of tender years is not required to conform to the standard of behaviour which it is reasonable to expect of an adult, but his conduct is to be judged by the standard of behaviour to be expected from a child of like age, intelligence and experience. A child may be so young as to be manifestly incapable of exercising any of those qualities of attention, intelligence and judgment which are necessary to enable him to perceive a risk and to realize its unreasonable character. On the other hand, it is obvious that a child who has not yet attained his majority may be as capable as an adult of exercising the qualities necessary to the perception of a risk and the realization of its unreasonable character.

"Between these two extremes there are children whose capacities are infinitely various. The standard of conduct required of such a child is that which it is reasonable to expect of children of like age, intelligence and experience. In so far as concerns the child's capacity to realize the existence of a risk, the individual qualities of the child are taken into account. If the child is of sufficient age, intelligence and experience to realize the harmful potentialities of a given situation, he is required to exercise such prudence in caring for himself and such consideration for the safety of others as is common to children of like age, intelligence and experience. The fact that a child is habitually reckless

of the safety of himself and others to a degree unusual in similar children, does not excuse him.

"*It is impossible to fix the definite age at which children are capable of negligence or to fix the age at which a child, or any class of children, is able to appreciate and cope with the dangers of any particular situation. * * **" (Emphasis ours).

The foregoing rules of law were applied by the Supreme Court in the case of Dallas Ry. & Terminal Co. v. Rogers, 147 Tex. 617, 218 S.W.2d 456, when the court there held that a child of tender years is not bound to exercise for its own safety the care required of an adult, but the standard by which to measure the child's conduct is that degree of care ordinarily exercised by children of the same age, intelligence, experience and capacity under the same or similar circumstances. Many authorities are there cited in support of the stated rule of law.

In the case of Northern Texas Traction Co. v. Thetford, 44 S.W.2d 902, 904, the Commission of Appeals held with the approval of the Supreme Court that: "In determining whether negligence is chargeable against a child who has passed beyond the age of irresponsibility, an inquiry as to the extent of his capacity to appreciate the dangers of the situation is of prime importance The law requires that he exercise such degree of care as a person of his capacity would ordinarily exercise, under like circumstances. The matter of age, though germane to the question of capacity, is not necessarily of controlling force."

The commission stated this principle of law has support in many cases there cited.

In a recent similar case the Court of Appeals of Tennessee held that: "* * * if an owner of land knows that children of tender years habitually play upon his land to the extent that such premises become known as a playground for children, he is bound to exercise ordinary care to see that his premises are reasonably safe for such children. To hold otherwise would establish a principle that the owner would not be liable for injuries resulting to children from dangers to which he knowingly

exposed them." Williams v. Town of Morristown, 222 S.W.2d 607, 612, Supreme Court ordered judgment entered on the jury verdict, 222 S.W.2d 615.

In most of the cases cited the parties joined issues and the facts were developed, in which event it is usually easier to determine a proper solution of the questions presented. It may be that a proper development of the fact issues in the case at bar would quickly settle the issues of this case. However, under the authorities cited and many others, it is our opinion that appellants' petition alleged facts to be determined either by a jury or the trial court without a jury. The question of whether or not a normal boy of the age, experience, capacity, intelligence and understanding of the deceased Copeland boy had sufficient discretion to know and understand the dangers of swimming in the pit in question and the consequences of such is a fact question for the fact-finding body. In determining such a fact issue the fact-finding body may take into consideration the individual qualities of the child as compared with those of other children its age, as well as all of the circumstances involved in the death of the child, including any existing special dangers in connection with swimming in the pit but the age of the child alone is only one of the circumstances to be considered. In support of our position we cite the following additional authorities in which boys about the age of the Copeland boy were either injured or killed: Johns v. Fort Worth Power & Light Co., Tex. Civ.App., 30 S.W.2d 549, writ refused; Stephenville, N. & S. T. Ry. Co. v. Voss, Tex.Civ.App., 159 S.W. 64; Texas & P. Ry. Co. v. Phillips, 91 Tex. 278, 42 S.W. 852.

For the reasons stated it is our opinion that the trial court erred in sustaining appellees' special exception number one, dismissing the case and holding, in effect, that appellants had failed to allege a cause of action. The judgment of the trial court must therefore be reversed and the cause remanded for a trial on the merits and it is so ordered.