LELA M. MASSIE ET AL V. H. A. COPELAND ET AL.

No. A-2663. Decided October 18, 1950.
(233 S. W., 2d Series, 449.)

*Bain & Bain,* of Floydada, *Martin & Martin* and *Howard L. Martin,* all of Wichita Falls, and *Lucian Morehead,* of Plainview, for petitioner:

The Court of Civil Appeals erred in holding that the parents of a normal, healthy, robust boy, a month or more over 14 years of age who was not below normal in age, experience, capacity and understanding, can recover damages from a land owner, upon whose land the boy was swimming in a water hole, made from the excavation of gravel, voluntarily and without permission of the land owner. Williams v. Town of Morristown, 189 Tenn. 124, 222 S. W. 2d 607; Banker v. McLaughlin, 146 Texas 434, 208 S. W. 2d 843. 8 A. L. R. 2d 1231, 1299; Van Alst v. Kansas City, 239 Mo. App. 346, 186 S. W. 2d 762.

*John B. Stapleton,* of Floydada, and *Ratliff, Conner & Walker,* and *L. D. Ratliff,* all of Spur, for respondents.

Because the pit served no useful purpose to the owners and could have been filled in at a slight cost to them, and that when it contained water was an attractive place for children, and constituted a dangerous condition which involved an unreasonable risk to children who might attempt to swim in it and, although 14 years of age, plaintiffs' son had never had the experience in swimming in such a place as this pit and did not realize or understand the dangers connected therewith, defendants should be held responsible for his death. Dallas Ry. & Term. Co. v. Rogers, Civ. App. 214 S. W. 2d 160, affirmed in Supreme Court, 147 Texas, 617, 218 S. W. 2d 456; Galveston Elec. Co. v. Antonini, 152 S. W. 841; Bass v. Quinn-Robbins Co., Idaho, 216 Pac. 2d 944.

Mr. Justice Smedley delivered the opinion of the Court.

Respondents Copeland and wife sued petitioners Mrs. Lela M. Massie and her children for damages on account of the death of respondents' fourteen year old son who was drowned while swimming in a pond or pit partially filled with water on land which was owned by W. M. Massie, now deceased, petitioners being his only heirs.

A special exception to respondents' petition was sustained by the trial court, and the suit was dismissed when they refused to amend. The Court of Civil Appeals reversed the trial court's judgment and remanded the cause for trial, holding that the petition presents a question or questions of fact for determination either by a jury or by the trial court without a jury. 228 S. W. 2d 960.

Since the case turns on the sufficiency of the petition, we state fully the substance of its allegations. They are as follows:

W. M. Massie resided in the town of Floydada, Texas, and was engaged in the business of buying and selling real estate consisting of town lots, many of which he owned. He owned and possessed a tract of land containing 6.65 acres situated within the corporate limits of the town and near the southwest corner of the townsite. This tract is partially surrounded by residence and business houses and in close proximity to them. On the four sides of the tract are unpaved roads which are designated and named as streets. The main paved highway, which people travel in going from Floydada to Ralls and thence to Lubbock, runs past and immediately adjacent to the southwest corner of the tract. For some years prior to July 10, 1948, W. M. Massie permitted the officials of the town of Floydada, for the purpose of improving the streets of the town, to remove from the tract of land at a place which is clearly visible from the roads above mentioned large quantities of caliche, thereby creating on the tract an open pit with approximate dimensions of 430 feet in a north and south direction and 131 feet in an east and west direction, and ranging in depth from 30 to 50 feet, with abrupt and steep banks on the east and west, and with the north and south banks more sloping but still steeply inclined. On occasions when sufficient rain fell in the vicinity of Floydada the pit would fill with muddy water which drained therein from a borrow ditch on one of the streets, from a westerly direction and from a small area to the north, and there would be formed a deep and treacherous hole of muddy water, the depth of which would not be ascertained without measurement, and from which it would be very difficult, if not impossible, to rescue a drowning person or to recover the body of such a person in time to restore life. Because of these facts the pit constituted a dangerous condition to any person, and more particularly to minor children, who might attempt to swim in it. When the pit was filled or partially filled with water the children of the town would resort to it to swim, which was known to W. M. Massie, or should have been known to him by the exercise of ordinary care. A short time before July 10, 1948, the pit, because of rain, became partially filled with muddy water. On that day respondents' son, who lived in Floydada and was fourteen years, one month and eight days old, and who had never had experience in swimming in such a place as the pit and did not appreciate, realize or understand the dangers of the pit, was attracted to it because it was partially filled with water and "proceeded to engage in swimming in the muddy waters of said pit and was drowned when he attempted to swim across the same or at least when he swam out into said pit." Other boys were present and attempted to rescue him, but their efforts were thwarted by the size and depth of the pit and the abrupt and steep banks. The boys pro-

cured help of others, but due to the size and depth of the pit and the abrupt and steep banks and the muddy waters they were unable to recover the body in time to restore life. W. M. Massie knew, or by the exercise of ordinary care should have known, that the children of the town of Floydada would resort to the pit for the purpose of swimming, and that they had resorted to it for many years, and knew or should have known that the pit when filled or partially filled with water created a condition which involved an unreasonable risk of death to children who might swim in it, and that they might be drowned. Nevertheless, in spite of the fact that the pit served no useful purpose and that the expense of preventing the pit from filling with water would have been nominal and slight, he took no steps to eliminate the dangers, but permitted the dangerous condition on his property to remain. He was negligent in the following respects, each of which was a direct and proximate cause of the death of respondents' son: he failed to enclose the pit with an adequate fence to indicate that it was private property; he failed to place warning signs around the pit; he failed to construct drainage ditches around the pit so that water would not flow into it; and he failed to dam up the places where the water from the surrounding area was flowing into it. At the time of his death respondents' son was "a normal, healthy and robust boy of the age 14 years, one month and eight days".

Petitioners' special exception which was sustained by the trial court is as follows:

"Defendants' specially except to Plaintiffs' Fifth Amended Original Petition as a whole and say that same alleges no cause of action against them for the reason that said pleading shows upon its face that H. A. Copeland, Jr., deceased, was at the time of his death a normal, healthy, robust boy fourteen years of age who voluntarily went upon the land of W. M. Massie, deceased, as a trespasser and who voluntarily went in swimming in open water upon said land, and the obvious danger of drowning in said open pool of water the said H. A. Copeland, Jr. is legally presumed to have known and understood because of his age and normality; and of this exception the defendants pray judgment of the court."

The Court of Civil Appeals, in reversing the judgment of the trial court sustained the special exception, expressed the opinion that the trial court's judgment is contrary to the latest Texas authority on the question or questions presented, Banker v. McLaughlin, 146 Texas 434, 208 S. W. 2d 843. And respondents in their briefs, in the Court of Civil Appeals and in this

Court rely upon that decision. They say: "We rest our case squarely upon the decision of this Court in the Banker v. McLaughlin case, [146 Texas 434] 208 S. W. 843, and say that our petition here meets all the requirements of a cause of action as set forth in that decision."

The facts as alleged in respondents' petition are in many respects similar to those in Banker v. McLaughlin. Petitioners direct attention to several differences in the facts, but we believe that none of them is of controlling importance except the difference between the age, fourteen years, and consequent knowledge and understanding, of respondents' son and the age, five years, and consequent immaturity, of the child because of whose death the Banker-McLaughlin suit was brought.

■■ It is true, as held in Banker v. McLaughlin, that the question in the "attractive nuisance" cases is one of negligence. And in these cases, as in other negligence cases, "There is no injury, in a legal sense, which can give a right of action, unless it is occasioned by a violation of some duty owing to the injured." Murphy v. City of Brooklyn, 118 N. Y. 575, 23 N. E. 887, 888. See also: Best v. District of Columbia, 291 U. S. 411, 78 L. Ed. 882, 887, 54 Sup. Ct. 487; Louisville & N. R. Co. v. Hutton, 220 Ky. 277, 295 S. W. 175, 176, 53 A. L. R. 1328; 38 Am. Jur. p. 806, Sec. 144; 27 Texas Law Review, pp. 1, 12; Great Atlantic & Pacific Tea Co. v. Evans, 142 Texas 1, 4, 175 S. W. 2d 249; Magnolia C. C. B. Co. v. Jordan, 124 Texas 347, 359, 78 S. W. 2d 944. But attractive nuisance cases are not ordinary cases of negligence. On humane considerations, the duty arises to exercise care for the protection of indiscreet children of tender years who, although they are trespassers, may come in contact with instrumentalities or conditions the danger of which they are unable to appreciate on account of their youth and consequent indiscretion. Louisville & N. R. Co. v. Hutton, 220 Ky. 277, 295 S. W. 175, 176, 53 A. L. R. 1328; 38 Am. Jur. pp. 805-809, Sec. 144.

■ Four conditions must be satisfied to make a case of liability under the doctrine. The conclusion is expressed in Banker v. McLaughlin, 146 Texas 434, 441, 208 S. W. 2d 843, that all of these conditions are fulfilled by the record in that case and the conditions are thus stated in the opinion:

"(a) the place where the condition was maintained was one upon which the possessor knew or should have known that small children would likely frequent the place and play about it; (b) the condition was one of which the possessor knew, or should

have known, involved an unreasonable risk of death or serious bodily harm to such children; (c) the child, because of its tender years, did not realize the risk involved in going into the pool; and (d) the utility, if any, to Mr. Banker of eliminating the danger [maintaining the condition] was slight as compared to the probability of injury resulting therefrom."

The elements or conditions thus stated are the same as those set out and approved in the Restatement of the Law of Torts, Vol. 2, p. 920, Sec. 339. See also Prosser on Torts, pp. 620-625, Sec. 77; Note 36 A. L. R. pp. 34, 294. Of these elements probably the most important is that the child, because of his tender years, does not realize the risk or danger. It is in large measure the basis for the duty to exercise care to protect the child, which is imposed upon the property owner or possessor only when and because the child is too young to understand and appreciate the danger and so is incapable of exercising a proper degree of care for his own protection. Prosser on Torts, pp. 617, 623, Sec. 77; Restatement of the Law of Torts, Vol. 2, p. 922, Sec. 339; 38 Am. Jur. pp. 824-825, Sec. 156; 27 Texas Law Review, pp. 1, 10, 12-13.

The absence of this essential element was the reason for the decision in Stimpson v. Bartex Pipe Line Company, 120 Texas 232, 36 S. W. 2d 473, that the plaintiff's petition stated no cause of action. In that case a boy six years of age was injured when he climbed to the top of and fell from a large oil storage tank 30 feet high. The petition alleged that the plaintiff was of tender years, wanting in discretion and judgment, and did not realize and appreciate the danger there would be in climbing upon the tank. Notwithstanding this allegation, it was held that no cause of action was stated in the petition. The court said: "The facts pleaded merely show a danger which was obvious and patent to a child of tender years, as such a child in the very nature of things is thoroughly capable of appreciating the fact that if it falls from a structure of the height of the oil tank it would in all probability receive an injury."

In the instant case the facts alleged as to the pond or pit partially filled with water and the danger of swimming in it are that the pond or pit is in dimensions about 430 feet north and south and about 131 feet east and west, with a depth of from 30 to 50 feet, with steep banks on two ends and sloping banks but steeply inclined on the other ends, and that the water in it was muddy so that its depth would not be ascertained without measurement. Respondents' son, it is alleged in the

petition, was "a normal, healthy and robust boy of the age of 14 years, one month and eight days". He "proceeded to engage in swimming in the muddy waters of said pit and was drowned when he attempted to swim across the same or at least when he swam out into said pit." It is our opinion that the dangers of swimming in the pond or pit of water described in the petition were open and patent to a normal, healthy and robust boy fourteen years of age, and that "in the very nature of things" he was capable of understanding and appreciating the dangers.

■ We would not be justified in shutting our eyes to facts of such general knowledge as that normal fourteen year old boys understand the danger of swimming in deep water and the danger of steep banks, and that they understand that muddy waters may cover great depths. A normal fourteen year old boy is of high school age. He is well advanced in Boy Scout activities if a member of that organization. If not a member of it, he nevertheless has spent time enough in the outdoors to understand its attractions and its dangers. Some of our statutes recognize the maturity and discretion of fourteen year old children. A minor may select his own guardian when he is fourteen years of age. Article 4126, Revised Civil Statutes of 1925. A fourteen year old child, after hearing before the county judge or after passing an approved standard driver training course, may obtain a driver's license permitting him to engage in the serious and dangerous practice of operating an automobile on the public highways and city streets. Subdivision 1, Sec. 4, Art. 6687b, Vernon's Annotated Civil Statutes.

The foregoing conclusion, that the protection of the attractive nuisance doctrine is not to be extended to a normal boy fourteen years of age in such a case as this case, is well supported by the authorities.

The Supreme Court of California, in an opinion which denied recovery to the father of an eleven year old boy who was drowned in a deep hole of a large pool of muddy water, referred with approval to a decision of an appellate court of that state where "the court took into consideration the common knowledge that the perils of water are instinctively known even to a boy of ten years of age". Melendez v. City of Los Angeles, 8 Cal. 2d 741, 68 Pac. 2d 971, 974. The elaborate note entitled "Liability of Landowner for Drowning of Child" in 8 A. L. R. 2d on pp. 1299-1300, Sec. 43, contains references to several decisions from different states holding that the average child of 12, 10 or 9 years of age is charged with knowledge of the dangers of drowning.

Prosser, after stating that the doctrine "does not apply to children of sufficient age and mental capacity to be competent under the circumstances to look after themselves", says further that "in practice it is seldom that children above the age of 12 have been protected". He adds that "there are a few cases, where unusual and highly deceptive instrumentalities were present, in which children of an age between twelve and sixteen have been permitted to recover". Prosser on Torts, pp. 623-624, Sec. 77. A like statement appears in Corpus Juris Secundum:

"While there is no definite age fixed at which a child ceases to be entitled to the protection of the attractive nuisance doctrine, the great majority of cases in which it has been applied have involved children of less than ten years of age, and it has been considered that it cannot be applied to a child of the age of fourteen or over, at least in the absence of some showing of a lack of the mental development which is ordinarily found in children of that age or of a very exceptional state of facts." Vol. 65, p. 469, Sec. 29(11).

See also: 38 Am. Jur., p. 826, Sec. 157; Louisville & N. R. Co. v. Hutton, 220 Ky. 277, 295 S. W. 175, 177-179, 53 A. L. R. 1328; Kentucky Utilities Co. v. Earles' Adm'r, 311 Ky. 5, 222 S. W. 2d 929; Central of Ga. R. Co. v. Robins, 209 Ala. 6, 95 So. 367, 36 A. L. R. 10.

It is apparent from an examination of the authorities which have been cited and discussed above that in determining whether the attractive nuisance doctrine is applicable in a particular case consideration must be given both to the character of the danger to be appreciated and to the age or maturity of the child. Some perils are obvious to very young children. Others are not obvious to more mature children. 38 Am. Jur., p. 826, Sec. 157. In Best v. District of Columbia, 291 U. S. 411, 78 L. Ed. 882, 887, 54 Sup. Ct. 487, Chief Justice Hughes, in speaking of the special circumstances in which must be found the source of duty imposed upon the owner or possessor to exercise care for the protection of young children, included *"the character of the danger* to which they would *unwittingly* be exposed". (Emphasis added.) The principle is illustrated by Banker v. McLaughlin, 146 Texas 434, 208 S. W. 2d 843, and by Stimpson v. Bartex Pipe Line Co., 120 Texas 232, 36 S. W. 2d 473. In the Banker case it was alleged in the petition that the five year old boy was under the age of discretion and unable to appreciate the peril of the pit of water in which he was drowned, and the fact that he could not appreciate the peril of

the pit of water was assumed in the trial court and in the appellate courts. This Court, in the Stimpson case, held that a finding that the six year old boy was incapable of appreciating the danger could not be sustained under the facts pleaded in the case, because the facts pleaded showed that the danger was that of falling from the top of a tank 30 feet high which was open and obvious, and the plaintiff, although only six years of age, was thoroughly capable of appreciating the danger.

The Court held in McCoy v. Texas Power & Light Co. (Com. App.) 239 S. W. 1105, that the petition was sufficient to allege a cause of action, under the attractive nuisance doctrine. That was a suit for damages on account of the death of a fourteen year old boy who was electrocuted when he climbed a tower carrying high-tension wires. It was alleged that the boy, without coming in contact with the wires, received a severe electrical shock when he climbed up within a danger zone some distance from the wires, the existence of which zone was unknown to the public in that vicinity, and particularly to children of his years. Under a like state of facts, it was held in Johns v. Fort Worth Power & Light Co., 30 S. W. 2d 549, application for writ of error refused, that the pleadings and the evidence were sufficient to take the case to the jury, the suit being for the death of a boy fifteen years of age. Those were exceptional cases where unusual and highly deceptive instrumentalities were present. The instant case is not like those cases, because, as has been said, common knowledge tells us that a normal boy fourteen years of age is thoroughly capable of understanding and appreciating the danger of swimming in a pond or pit of water like that described in respondents' petition.

■ Respondents contend that the question whether or not their fourteen year old son who was drowned should have understood and appreciated the danger of swimming in the pit of water is, under their pleadings, one of fact for the jury. We believe that this question is usually regarded in attractive nuisance cases as a question of law for the court's decision. It has been so treated in the Banker case and in the Stimpson case, discussed above. The court determines whether the child is of such tender years and immaturity that the protection of the doctrine as against the particular condition or danger should be extended to him. This is a part of the court's decision that the property owner or possessor owes or does not owe a duty to the child. Professor Leon Green, in an article entitled "Landowners' Re-

sponsibility to Children", after discussing Banker v. McLaughlin, says:

"Every subsequent case will have to run the gauntlet of a court, *first of the judge who must find in the facts a duty to the particular child or parent, plus enough evidence to raise an issue of its violation;* and second, of a jury who, after considering all the facts and circumstances of the case and what a prudent man should have anticipated as a probable result of the defendant's conduct in the particular case, must find that the defendant violated his duty." (Emphasis added.) 27 Texas Law Review, pp. 1, 12.

Dallas Railway & Terminal Co. v. Rogers, 147 Texas 617, 218 S. W. 2d 456, decided a different question from that presented in the instant case. That was a suit by an eleven year old girl who was struck by a streetcar when she was crossing a street. Contributory negligence of the plaintiff was submitted to the jury as an issue of fact. It was held that the jury in passing upon the child's alleged contributory negligence should be permitted to measure her conduct by the standard applicable to a child rather than that applicable to an adult.

■ The Court's opinion in Banker v. McLaughlin contains this statement in one of its concluding paragraphs: "The governing rules and principles, although well established, should be applied with caution; that is, they should be given application only when the controlling facts bring the case well within such rules and principles." Caution in the application of the attractive nuisance doctrine is also suggested in the opinion in Best v. District of Columbia, 291 U. S. 411, 78 L. Ed. 882, 887, 54 Sup. Ct. 487. We believe that caution forbids the extension of the rule of Banker v. McLaughlin to the case alleged in respondents' petition.

The judgment of the Court of Civil Appeals is reversed and the judgment of the district court is affirmed.

Opinion delivered October 18, 1950.

Associate Justice Griffin not sitting.

MR. JUSTICE TAYLOR, dissenting.

I cannot agree with the majority holding that the normal fourteen-year-old Copeland boy was guilty of negligence *as a matter of law* for engaging in swimming in the pit in which

he was drowned. His father and mother alleged he did not understand its dangers. The effect of the majority holding is to deny them, merely on the ground he was fourteen years old and normal, the privilege of developing detailed evidence on the issue, which, under proper procedure, cannot be pleaded. The allegation that he was robust and healthy, adds nothing of value to the fact that he was normal, so far as his judgment and understanding concerning dangers are concerned. Both morons and prodigies in judgment can be robust and healthy. A normal fourteen-year-old boy is one of average intelligence *for that age group* and is merely free from mental diorder. See Webster's New International Dictionary for the meaning of "normal."

The bottom of the pit was not open and patent on the occasion in question. It lacked from 30 to 50 feet perpendicular of being level, the muddy water keeping the fact as to what portion of the water was over his head from being an open and patent danger. Can it properly be said as a matter of law that every fourteen-year-old boy of the average intelligence of that age group would ascertain by measurement, or otherwise, all portions of the "treacherous water hole," where its depth was over his head, especially when he saw other boys in the water? Can it rightly be said as a matter of law that he would have the judgment to grasp, and the discretion to stop to consider, that the pit was one from which, in view of its "abrupt and steeply inclined" banks, it would be difficult, if not impossible, to rescue a drowning person?

We know the boy was of an age when he still had five years to go before he was out of that group commonly known as "teen-agers," who, to say the least, could not all be held *as a matter of law* to have reasonably sound and prudent discretion and judgment with respect to the unusual swimming dangers shown by the petition. Five years, under wise provision of our law, would have had to elapse before he could have his disabilities of minority removed. Arts. 5921 and 5921a V.R.C.S. The majority refer to a fourteen-year-old minor's right to select his own guardian, in justification of their holding, citing in support article 4126 R.C.S. 1925, and refer to his being allowed a driver's license. Under the terms of the article cited such a minor cannot be accorded the right of selecting a guardian except under supervision of a court, and that only when *the court is satisfied* "that the person selected is suitable and competent." The driver's license that may be granted to a fourteen-year-old minor can be granted only after a hearing and under

judicial supervision. Subdivision 1, Sec. 4, Art. 6687b, V.A.C.S. Thus it is seen that the judgment, discretion and understanding of minors *of this age group* is recognized under law as being limited, and subject to legal restriction and inquiry,—all of which discounts rather than supports the majority view.

I am of opinion that the well-considered unanimous opinion of the Amarillo Court of Civil Appeals in this case (228 S. W. 2d 967, is both well grounded in the authorities and sound, and that the following rule stated by that court is correct:

"The question of whether or not a normal boy of the age, experience, capacity, intelligence and understanding of the deceased Copeland boy (as pleaded) had sufficient discretion to know and understand the dangers of swimming in the pit in question and the consequences of such, is a fact question for the fact-finding body. In determining such a fact issue the fact-finding body *may take into consideration the individual qualities* of the child as compared with those of other children its age, *as well as all of the circumstances involved in the death of the child, including any existing special dangers in connection with swimming in the pit, but the age of the child alone is one of the circumstances to be considered."* (Emphasis added).

Attention is invited to the authorities referred to and discussed in the Court of Civil Appeals' opinion, reference to which is made to avoid undue length and repetition. See also the article in full by Professor Leon Green of the University of Texas, 27 Texas Law Review, p. 113, in addition to the short excerpt cited by the majority.

This is a negligence case under the holding in Banker v. McLaughlin in which the attractiveness of the pit merely has bearing on knowledge that the owners had that children resorted to it, and had been doing so for such time that they were no longer trespassers. It is not a case involving a useful water tank maintained by landowners for watering stock. As showing the present status in Texas of the doctrine of liability for useless water hazards created by landowners on their premises causing the drowning of a child, see the following statement (8 A.L.R. 2d p. 1260) in an annotation of that subject:

"And after a considerable period of time in which the doctrine was refused credence in Texas, *it was unequivocally* adopted there in Banker v. McLaughlin, 146 Tex. 434, 208 S.W. 2d 843, 8 A.L.R. 2d 1231, *particular emphasis* being placed

therein on the fact that *the presence of children could be reasonably anticipated* by the owners, and the fact *that the particular hazard was no longer serving any useful purpose to the owner."* (Emphasis added)

It will hardly be questioned that evidence cannot properly be pleaded in detail. I am therefore unable to agree that this case, containing in the petition the issuable general facts both of the boy's understanding and normality, should be disposed of finally without a hearing on the merits, upon which detailed evidence, not proper to be pleaded, but proper to be adduced on a trial, could be developed. In my opinion it should not be assumed that no detailed facts, additional to the general facts of the boy's normality and age, touching his judgment and understanding, could be developed by his parents, since they allege *both his normality and that he did not appreciate and understand the dangers.* Without a trial on the merits justice in the cause can hardly be ascertained, since we cannot consistently say *as a matter of law* that the parents, who knew more about their son than anyone else, are correct in saying he was normal, but *are not correct in saying and cannot prove,* that he did not appreciate and understand the dangers.

For the reasons stated I respectfully dissent from the majority opinion.

Opinion delivered October 18, 1950.