**MISSOURI PACIFIC RAILROAD COMPANY, Appellant,**

**v.**

**Douglas F. HANCE et al., Appellees.**

**No. 13267.**

Court of Civil Appeals of Texas.

San Antonio.

Feb. 5, 1958.

Rehearing Denied March 5, 1958.

Kleberg, Mobley, Lockett & Weil, Corpus Christi, for appellant.

Lyman & Sudduth, Corpus Christi, J. H. Fugate, Jr., Kingsville, for appellee.

W. O. MURRAY, Chief Justice.

This suit was instituted by Richard Lee Hance, a minor, and Douglas F. Hance, individually and as parent, natural guardian and next friend of Richard Lee Hance, against Missouri Pacific Railroad Company, seeking to recover damages for personal injuries sustained by Richard Lee Hance

when a torpedo exploded and injured his right hand.

The trial was to a jury and resulted in a special issues verdict favorable to plaintiffs, and based upon such verdict judgment was rendered in favor of the minor, Richard Lee Hance, in the sum of $50,000 and in favor of the father, Douglas F. Hance, in the sum of $4,000. From that judgment the Railroad Company has prosecuted this appeal.

Appellant contends that under all the facts and circumstances in this case it should not have been tried under the attractive nuisance doctrine.

Richard, at the time he received his injuries, was twelve years, six months and nine days old. He was a student in junior high school and was in the seventh grade. He was described as a normal boy for his age. He had been a Cub Scout and a Boy Scout, and as such had received some instructions in safety. His father had taught him something about fireworks. About 4 p. m. on September 22, 1952, the day of the accident, Richard and a companion named Louis Malone, thirteen years of age, were out riding around on their bicycles. They went down to the railroad water tower and got a drink of water and then came back up the railroad right-of-way, near a point where Kenedy Street crosses the right-of-way. This was a point within the corporate limits of the City of Kingsville. A. T. Payne, a foreman for the Railroad Company, was preparing to install electric warning signals at this intersection and had placed railroad motor cars on the railroad right-of-way, but off the tracks and about sixty feet from the street intersection. There was a trail about twenty feet from where these motor cars were placed, where children customarily crossed going to and coming from school. These motor cars were unguarded and not in use at the time, but had been brought there to be used in connection with the installation of the signal lights. The Railroad Company employees had left for the day and no one was on duty in the vicinity of the motor cars. The cars had been locked together with a chain and covered with tarpaulins. Richard said that, to the best of his recollection, one of the motor cars was not covered. The two boys were attracted to the motor cars and got on them and touched and examined them. Louis found a signal kit containing some torpedoes. The Railroad Company required these signal kits containing the torpedoes to be on the motor cars at all times, as they were used to signal approaching trains in an emergency. There was a material car near-by, in which these kits could have been locked when the motor cars were not in use, and this would not have been a great deal of trouble, but inasmuch as these kits were required to be kept on the motor cars they were not locked up. Richard and his companion took about nine of these torpedoes. They were wrapped in red paper and marked "danger". Richard admitted they probably might not have taken the torpedoes if any one had been watching, and again they might have, as the torpedoes were small and could be hidden. The boys went over to a concrete building near-by and "peeled" the paper off the torpedoes. Richard noticed they were marked "danger" but did not know whether it meant they were poisonous, explosive, or just what. At the time they found the torpedoes, Richard knew nothing about them, not even that they were called torpedoes, but his companion told him that they were torpedoes and would pop and make a flash if struck with something hard. Louis broke a piece off one torpedo and threw it against a cement wall some distance away but it did not explode. He then broke off another piece and threw it against the pavement, real hard and near to his feet, and it popped and made a noise and a flash. The boys then left on their bicycles and started to go to Louis's house where there was an anvil and a hammer, where they expected to explode the torpedoes in that manner. They had traveled several blocks from the railroad right-of-way when they came to an intersection where there was a stop and go signal light.

Louis got by, but the red light caught Richard and he was forced to stop. While thus stopped he tried to break a piece off one of the torpedoes but was unable to do so. He then struck the torpedo against his handlebars, trying to tap it hard enough to break it into pieces but not hard enough to explode it. He said he just tapped it on the handle bars but it exploded, injuring his hand very severely. He said that after seeing a small piece of one of the torpedoes explode, he would not want one to explode in his hand and had no intention of exploding it when he tapped it on his handlebars. He was trying only to break it into pieces.

Appellant made a motion for an instructed verdict and contends that the court erred in not granting its motion. The motion, among other things, raised the issue that, under all the facts and circumstances, this was a case in which the attractive nuisance doctrine should not be applied.

 We agree with appellant's contention. There are two reasons why appellees cannot recover herein under the attractive nuisance doctrine. The record shows that Richard knew he was doing wrong when he purloined the torpedoes, and that he knew and realized the explosive nature of the torpedoes. Richard was a trespasser upon the railroad property and in order to recover under the attractive nuisance doctrine he must allege and prove circumstances which will bring him under the protection of such doctrine. Otherwise he is confronted with the well-established rule that a landowner owes to a trespasser no duty other than not to intentionally or willfully injure him. It is quite clear that if Richard had not purloined the torpedoes he would never have been injured. A landowner is not required to anticipate that a person, realizing the culpability of his act, will wrongfully come upon the landowner's property and unlawfully take property belonging to him and then expect the landowner to pay for injuries which the person receives as a result of his misconduct. The burden is upon a normal twelve-year-old minor to allege and prove that he did not appreciate the moral turpitude involved in wrongfully going upon the premises of another and unlawfully taking his property, before he can recover for injuries growing out of such wrongful taking. Appellant requested that an issue be submitted to the jury as to whether Richard knew that it was wrong to take the torpedoes, and his counsel stated in effect that such was not necessary as it was undisputed that Richard did know it was wrong to take the torpedoes. His counsel also admitted in his argument to the jury that Richard knew it was wrong to take the torpedoes.

Richard was not ignorant of the explosive nature of the torpedoes at the time of his injury. He testified, that at the time he and his companion first took the torpedoes he was ignorant concerning them, but his companion at once told him that they were torpedoes, and gave him a demonstration of how even a small part of one would explode when thrown against the pavement. They were on their way to his companion's home to explode the torpedoes by placing them upon an anvil and striking them with a hammer. Richard did not think the torpedoes would explode if he tapped them upon his handlebars, and in this he was mistaken, but he was not ignorant of the explosive nature of the torpedoes.

The above holdings are supported by the following Texas cases: Dudley & Orr v. Hawkins, Tex.Civ.App., 183 S.W. 776; Stimpson v. Bartex Pipe Line Co., 120 Tex. 232, 36 S.W.2d 473; Schroeder v. Texas & Pacific Ry. Co., Tex.Civ.App., 243 S.W.2d 261; Massie v. Copeland, 149 Tex. 319, 233 S.W.2d 449; Galbraith-Foxworth Lumber Co. v. Gerneth, Tex.Civ. App., 66 S.W.2d 471; George v. Texas & N. O. R. Co., Tex.Civ.App., 290 S.W.2d 264.

A California case which is very much in point and very similar to the case at bar is Bradley v. Thompson, 65 Cal.App. 226,

223 P. 572. At page 574, of 223 P., the Court said:

"But since the injury was the direct result of plaintiff's peculation as well as of his trespass upon defendant's land, the complaint should have contained some averment which would have sufficed to show that this 11 year old boy was ignorant of the moral turpitude involved in his conduct—such an averment, for example, as that he was deficient in understanding and that therefore he did not realize the culpability of his conduct in making free with another's property."

See also, Hale v. Pacific Telephone & Telegraph Co., 42 Cal.App. 55, 183 P. 280.

The evidence here not only fails to show that Richard did not know the moral turpitude involved in purloining the torpedoes and their explosive nature, but it affirmatively shows the contrary.

It is not necessary to pass upon the other questions presented herein. The judgment of the trial court is reversed and judgment here rendered that appellees take nothing.