Jackie Byrum TIMMONS, Individually and as Representative of the Estate of Billy Edwin Byrum, Deceased, Appellant(s),

v.

TEXAS UTILITIES ELECTRIC COMPANY, Appellee(s).

No. 10–95–066–CV.

Court of Appeals of Texas, Waco.

Jan. 31, 1996.

Brenda J. Damuth, Robert W. Hartson, Inc., Dallas, for appellant.

Kevin J. Croy & David M. Weaver, Burford & Ryburn, L.L.P., Dallas, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

THOMAS, Chief Justice.

■ Jackie Byrum Timmons appeals from a summary judgment in favor of Texas Utilities Electric Company (TU) in the wrongful death and survivor suit she instituted following the electrocution and death of her fourteen-year-old son, Billy Byrum.[1] TU moved for a summary judgment on the grounds that it did not owe Billy a duty, or if it did, then it did not breach that duty. It also argued that Billy's negligence was the sole cause of his death. Timmons asserts that fact questions exist which preclude summary judgment. In reviewing the propriety of the judgment, we will apply the well-established summary-judgment rules.[2] Because we agree with Timmons, we will reverse and remand.

## FACTS AND BACKGROUND CONTENTIONS

On July 8, 1992, at approximately 1:15 a.m., fourteen-year-old Billy Byrum was fatally injured as he climbed a TU electrical tower in Hillsboro. At the time he climbed around and over a barbed-wire barricade[3] and proceeded up the tower, he was legally intoxicated.

Timmons concedes that Billy did not have express permission to be on the property. Therefore, he would generally be considered a trespasser, and TU would only owe a duty not to injure him willfully, wantonly, or through gross negligence. *Burton Construction & Shipbuilding Co. v. Broussard,* 154 Tex. 50, 273 S.W.2d 598, 603 (1954). Tim-

---

1. Timmons sued in her individual capacity and as the representative of her deceased son's estate.

2. A party is entitled to summary judgment if he can demonstrate that there is no genuine issue of material fact. *Nixon v. Mr. Property Management,* 690 S.W.2d 546, 548–49 (Tex.1985). Evidence favorable to the non-movant is taken as true; all reasonable inferences are indulged in favor of the non-movant, and any doubts are resolved in his favor. *Id.*

3. The "barricade" on the tower was constructed out of four metal arms, each extending approximately one and one-half feet out from each of the four corners of the tower and placed about twelve feet above the ground. Four strands of barbed wire had been strung around the tower and secured to the arms at approximately two to five inch intervals; seven strands were strung inside the tower in a criss-cross manner.

mons did not plead that TU acted wilfully, wantonly, or with gross negligence.

■ However, she did plead facts raising the doctrine of attractive nuisance and alleged a number of acts of negligence which she contends proximately caused Billy's death.[4] When a land owner or occupier maintains an attractive nuisance on his property, there is an implied invitation for children to come on the premises, and a special duty to exercise reasonable care arises. *Banker v. McLaughlin*, 146 Tex. 434, 208 S.W.2d 843, 848 (1948). Therefore, if the attractive-nuisance doctrine is applicable, TU would be liable for any negligent acts or omissions that proximately caused Billy's death.

■ TU moved for a summary judgment on the grounds that it conclusively negated the applicability of the attractive-nuisance doctrine. It also asserted that, even if the attractive-nuisance doctrine is applicable, then it has conclusively negated two elements of Timmons' cause of action: breach of duty and causation. The court granted TU's motion without specifying the ground or grounds for judgment in its order; therefore, if either of the foregoing elements are conclusively negated in the summary-judgment evidence, we must affirm the judgment. *Rogers v. Ricane Enterprises, Inc.*, 772 S.W.2d 76, 79 (Tex.1989).

### ATTRACTIVE NUISANCE

■ In Timmons' first point of error, she claims that TU did not conclusively negate the applicability of the attractive-nuisance doctrine. There are four elements to the attractive-nuisance doctrine in Texas:[5]

(a) the place where the condition is maintained is one upon which the possessor knows, or should know, that young children are likely to trespass;

(b) the condition is one of which the possessor knows, or should know, and which he realized or should realize as involving unreasonable risk of death or serious bodily harm to such children;

(c) the children, because of their youth, do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it; and

(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein.

RESTATEMENT OF TORTS § 339 (1934); *Massie v. Copeland*, 149 Tex. 319, 233 S.W.2d 449, 451 (1950).

TU'S KNOWLEDGE OF CHILDREN TRESPASSING

Citing a comment to section 339(a) of the Restatement (Second) of Torts, TU asserted that, unless and until it received notice that children had been climbing on the tower above the barricade, or received other information that would indicate that children were climbing above the barricade, it had no independent duty to perform inspections of the tower or barricade to determine such fact. See RESTATEMENT (SECOND) OF TORTS § 339 cmt. a (1966). TU attached summary-judgment evidence establishing that it had not received any reports of unauthorized persons climbing above the barbed wire on this tower or any other tower in a Hillsboro residential area. TU's summary-judgment evidence also contained statements that it had no reason to

---

4. Timmons alleged that the towers were constructed in a lattice-type fashion which children could climb; that TU should have known that the towers would attract and entice children to use their normal instincts and climb the towers; and that a child would likely suffer serious personal injury or death from coming in contact with the high-voltage wires. Timmons argued that TU was negligent and produced summary-judgment evidence that there is no barbed-wire fence around the tower; the angle-iron supporting the tower "criss-crossed" up the tower so that no step would be too big, even for a child; the barbed wire that formed the barricade was loose;

and the only "Danger" sign on the tower, approximately three inches by ten inches, was on one of the legs of the tower, was faded, and blended in with the color of the tower.

5. Texas' attractive-nuisance doctrine is based upon the Restatement of Torts § 339, rather than the Restatement of Torts (Second). We will follow Texas Supreme Court precedent and express no opinion on whether the Restatement (Second) should be adopted. See *Massie v. Copeland*, 149 Tex. 319, 233 S.W.2d 449, 451 (1950).

know that children were likely to climb above the barbed-wire barricade on the tower.

■ However, in an attractive-nuisance case, a duty to act reasonably—*i.e.,* to conduct inspections if they would be reasonable—would stem from TU's actual *or constructive knowledge* that children are likely to go there. RESTATEMENT OF TORTS § 339. "If one by exercise of reasonable care would have known a fact, he is deemed to have had constructive knowledge of such fact." BLACK'S LAW DICTIONARY, 314 (6th ed.1990). Moreover, although TU argues that it had no knowledge of children climbing *above the barricade* on the tower, the inquiry should be whether or not TU knew or should have known that children were likely to trespass at all. RESTATEMENT OF TORTS § 339.

Timmons attached a photograph of the tower to her affidavit. She stated in her affidavit, and the photograph depicts, that the tower is located on a residential lot in close proximity to the home on the lot. She contended below that children have a natural proclivity to climb and the fact that a "makeshift" barricade was constructed in the first place demonstrates TU anticipated that children may attempt to climb the tower. She presented other summary-judgment evidence that children "hung around" and played on the tower and frequently climbed over the barricade. In fact, TU's summary-judgment evidence established that the barricade was added to the tower in 1981 or 1982 "to prevent unauthorized persons from climbing within close proximity to the electric wires connected to [the] utility towers."

TU's articulated reason for adding the barricade was to prevent people from climbing too high on the tower. The tower was in a neighborhood with many children. Electricity towers, situated where young children are likely to be, have been the subject of a number of attractive-nuisance cases in Texas. See *McCoy v. Texas Power & Light Co.,* 239 S.W. 1105, 1110 (Tex.Comm'n.App.1922, judgm't adopted); *Johns v. Fort Worth Power & Light Co.,* 30 S.W.2d 549, 557 (Tex.Civ. App.—Fort Worth 1930, writ ref'd). The summary-judgment evidence raises a fact question about whether TU knew, or should

have known, that children would be likely to trespass.

CHILD'S YOUTH PREVENTED HIM FROM REALIZING RISK

■ TU argues that Billy was too old for the attractive-nuisance doctrine to apply and that he was aware of the risks associated with climbing the tower. Generally, the protection of the attractive-nuisance doctrine does not apply to a normal boy fourteen years of age. *Massie,* 233 S.W.2d at 453. However, there may be exceptions depending upon the character of the danger to be appreciated and the age or maturity of the child. *Id.* In *Massie,* the Supreme Court held that the attractive-nuisance doctrine did not apply to protect a normal fourteen-year-old boy from the risks of swimming in a muddy pond, noting that "the dangers of swimming in the pond or pit of water ... were open and patent to a normal, healthy and robust boy of fourteen years of age, and that in the very nature of things he was capable of understanding and appreciating the dangers." *Id.* at 452.

Timmons alleged that Billy was electrocuted when the electricity arced from the wires, not from direct contact with the wires. Adam Irwinsky, one of the Hillsboro police officers who investigated the incident, completed and filed an Incident Report. The report indicated that Billy's burns were not caused by direct contact but rather from "flash burns from the sparks when electricity arced because of no entrance or exit wounds caused from a direct current." The *Massie* court recognized that electrical arcing presented an exceptional case with a highly deceptive instrumentality—as opposed to the issue in that case: the risk involved in swimming a muddy pond. *Id.* at 454. "The public knows that it is dangerous to touch a live wire, but very few know that there exists danger of death from this powerful current by near approach to the wire so charged, without actually coming in contact with the wire." *McCoy,* 239 S.W. at 1110.

■ The summary-judgment evidence indicates that Billy had been warned not to climb the tower. If Billy had been injured by falling from the tower, or by coming into direct contact with the power lines, then

perhaps one might argue that he would not be able to rely upon the attractive-nuisance doctrine, as those would be risks he should appreciate.[6] However, there is evidence Billy's death was caused by electrical arcing, and there is no evidence that he knew of or was warned about the dangers of arcing. The "danger" sign attached to the tower by TU made no mention of arcing. Billy's failure to appreciate the risk of arcing involved in climbing the tower is precisely the reason for the development of the attractive-nuisance doctrine—to protect young children from dangers they cannot appreciate. RESTATEMENT (SECOND) OF TORTS § 339(c).

Moreover, the question of whether a child is of such tender years and immaturity that the court should extend the protection of the attractive-nuisance doctrine in a particular case has been held to be a question of law for the court. *Massie*, 233 S.W.2d at 454; *Kopplin v. City of Garland*, 869 S.W.2d 433, 438 (Tex.App.—Dallas 1993, writ denied); *Jannette v. Deprez*, 701 S.W.2d 56, 60 (Tex. App.—Dallas 1985, writ ref'd n.r.e.). Therefore, whether the attractive-nuisance doctrine applies to protect a fourteen-year-old boy from the dangers of electrical arcing has already been decided in the affirmative as a matter of law. *Id.*; *McCoy*, 239 S.W. at 1110; *Johns*, 30 S.W.2d at 557. TU provided no evidence that the common knowledge of a normal fourteen-year-old boy, with respect to electrical arcing, has changed since 1950 so as to justify deviation from prior holdings on this issue. *See id.*

The summary-judgment evidence raised a fact question regarding electrical arcing as the instrumentality of Billy's electrocution; Texas courts have long recognized, as a matter of law, that a fourteen-year-old boy does not possess knowledge of the arcing propensities of electricity. *Id.* Therefore, TU has not conclusively negated the third element of the attractive-nuisance doctrine. Point one is sustained.

## NEGLIGENCE

Because TU failed to conclusively negate the applicability of the attractive-nuisance doctrine, for its summary judgment to stand, it must have conclusively negated one of the two "negligence" elements upon which it had moved for a summary judgment: (1) that TU did not breach its duty to Billy, or (2) that Billy's negligence was the sole cause of his death. *Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex.1993).

### BREACH OF DUTY

First, TU asserts that Timmons "failed to present any competent summary judgment evidence to show that there was a material fact issue on whether [TU] breached this alleged duty." This contention improperly shifts the burden of proof in a summary-judgment case to the non-movant and is not the correct standard for granting a summary judgment. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex. 1979).

Second, TU claims that the preventative steps it took were reasonable to warn and make safe any dangers associated with the tower. The degree of care required, or steps that would be reasonable, depends upon the danger involved. *West Texas Utilities Co. v. Renner*, 53 S.W.2d 451, 453–54 (Tex.Comm'n.App.1932, holding approved). Assuming an electrical tower is found to be an attractive nuisance, a company maintaining highly dangerous electrical wires is under a duty to use the care and prudence reasonably necessary to protect the children who are likely to trespass. *Id.* at 454; RESTATEMENT OF TORTS § 339. TU's summary-judgment evidence demonstrates the following:

(1) A sign was posted on the tower which read: "Keep away DANGER Wires Heavily Electrified Private Property";

(2) The barricade previously discussed was in place;

(3) TU had not received any reports of children trespassing; and

(4) One person testified that Billy was going to climb up that tower and nothing TU could have done would have stopped him.

---

**6.** We express no opinion on the application of the attractive-nuisance doctrine under those circumstances.

The determination of negligence is typically a fact question for the jury. *Ray v. Farmers State Bank of Hart,* 576 S.W.2d 607, 609 (Tex.1979). The question only becomes one of law when reasonable minds can draw but one conclusion. *See id.* Because reasonable minds could differ as to whether TU was negligent or whether it exercised reasonable care to protect children from the dangers of electrical arcing in light of the risk involved, a fact question remains and summary judgment is improper. *Kassen v. Hatley,* 887 S.W.2d 4, 9 (Tex.1994); *Ray,* 576 S.W.2d at 609. Point two is sustained.

CAUSATION

Finally, Timmons argues that TU did not conclusively negate causation in Billy's death by establishing that his negligence was the sole cause of his death. As previously discussed, Timmons raised questions of fact regarding TU's negligence. Causation is a fact question, and reasonable minds could differ as to the cause or causes of Billy's death. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 314 (Tex.1987). Point three is sustained.

The summary judgment is reversed, and the cause is remanded for a trial.