## J. W. PETERSON v. MINNESOTA POWER & LIGHT COMPANY.[1]

November 17, 1939.

No. 32,108.

[1]Reported in 288 N. W. 588.

*Victor E. Essling* and *Edward W. Peterson,* for appellant.

*Gillette, Nye, Harries & Montague* and *W. O. Bissonett,* for respondent.

HILTON, JUSTICE.

Appeal from a judgment entered after defendant's motion for judgment notwithstanding the verdict for plaintiff was granted.

Plaintiff's decedent, Gustaf Peterson, a youth of 18½ years of age, was electrocuted when a tree he was cutting on his father's property either struck, or came into the immediate vicinity of, high-tension electrical wires maintained by defendant.

Some poles were needed to construct a scaffold along the side of a garage Gustaf and others were shingling. He and his brother went to the pasture to cut a few from a stand of young trees growing near defendant's power line. The poles of the line were placed along the side of a public road which ran parallel to the boundary of the pasture. The poles are on the pasture side of the road. Crossbars on them support six strands of wires carrying 66,000 volts. Directly below the wire nearest the pasture was a fence built by Gustaf and his father. It appears that it was constructed a few feet beyond the boundary of the pasture so that it was actually in the easement.

The power line was constructed in 1917, before Gustaf was born. Shortly after it was erected, defendant's predecessor cleared the trees growing in the area now fenced as pasture for a distance of 40 feet. The apparent object was to eliminate interference with the wires. A new growth of young trees, including the one Gustaf was cutting when killed, established itself.

The only sign forewarning danger from the 66,000 volts had become rusted and nearly illegible, except upon minute examination.

On the morning of the accident, August 5, 1937, there was a heavy fog and the trees were laden with moisture. Gustaf selected two trees and cut them successfully. He then chose a poplar

about 14 years old. After the accident, measurements showed the stump was 24 feet from the line of the power poles. The tree, while standing, was 30 feet or slightly more in height. No one saw Gustaf cut it. His brother observed the electrical display created when the tree either struck the power wire or wires or came within three and one-half inches of them, in which case the current would jump this gap. The tree, after falling, came to rest on the fence below the wires. The testimony establishes it was then at an angle to the wires. At the point where the power line was either struck or closely approached, the wires are 17 or 18 feet from the ground.

There is sharp dispute as to what angle from the wires the tree was cut. Plaintiff contends it was chopped so that it would fall at a 45-degree angle from them. There can be no argument but that the tree was cut in the general direction of the power line.

Whether defendant's failure to have proper warning signs placed at intervals constituted negligence need not now be determined. Likewise, discussion as to whether it was foreseeable someone would sever a tree so close to the power lines that it would contact the wires or come within the area which the current would jump will not dispose of the problem. The crux of the case rests in a determination whether Gustaf was guilty of contributory negligence as a matter of law. If so, responsibility in a legal sense must not be saddled on defendant.

At the outset it must be kept in mind that on motion for judgment notwithstanding the verdict the single question is whether there is any competent evidence reasonably tending to sustain the verdict. The motion should be granted only when it appears that the evidence is conclusive against the verdict. Northwestern M. & T. Co. v. Williams, 128 Minn. 514, 151 N. W. 419, L. R. A. 1915D, 1077. Helpful also is proper regard for the statement of Mr. Justice Holmes, particularly in view of the circumstances of this case.

"It is quite true that negligence must be determined upon the facts as they appeared at the time and not by a judgment from

actual consequences which then were not to be apprehended by a prudent and competent man. * * * The standard of conduct, whether left to the jury or laid down by the court, is an external standard, and takes no account of the personal equation of the man concerned. The notion that it 'should be co-extensive with the judgment of each individual,' was exploded, if it needed exploding, by Chief Justice Tindal, in Vaughan v. Menlove, 3 Bing. N. C. 468, 475." *The Germanic,* 196 U. S. 589, 595, 25 S. Ct. 317, 318, 49 L. ed. 610.

Turning to the case before us, it appears that Gustaf was a bright youth of 18½ years with two years of high school to his credit. There is no question that he was aware of the power line's existence. Were more than counsel's concession of this needed, testimony establishes that when Gustaf helped his father construct the barbed wire fence under the power line one of the wires was used as a guide to keep the fence straight. Nor need we speculate on the fact that Gustaf was mindful that the wires transmitted electricity. A youth of his age and background could not be ignorant of this fact. There was electricity in his father's house, and his mother operated some electrical appliances. In view of the fact that Gustaf was aware of the line and that it carried electricity, the next question is, can the law regard him as unappreciative of the fact that the power line was an instrumentality saturated with danger? Plaintiff states:

"However, there is not an iota of evidence in the entire record that he knew of the dangerous character of the power line except perhaps that he knew it was used for the transmittal of electricity."

Likewise it is claimed he had no knowledge the current could jump three and one-half inches.

The danger of electrical energy is a matter of common knowledge. Children of early age are aware of its deadly potentialities and realize that care must be exercised, although the latter may not always be the course of conduct pursued. Judicial notice

can be taken of the fact that it is generally known by people of even less education than Gustaf that danger lurks in electrical wires, especially to those unlearned in its properties. All persons are held by the law to a certain minimum of knowledge common to the community. In Restatement, Torts, § 290, the principle has been stated:

"For the purpose of determining whether the actor should recognize that his conduct involves a risk, he is assumed to know

"(a) the qualities and habits of human beings and animals and the qualities, characteristics and capacities of things and forces in so far as they are matters of common knowledge at the time and in the community."

Comment on clause (a) explains the proposition more fully.

"* * * He is treated as though he were a reasonable man and, therefore, he is treated as though he knew these things which a reasonable man at that time and place would know even though the actor is himself excusably ignorant thereof. As a reasonable man, the actor is required to possess such scientific knowledge as is common among laymen at the time and in the community."

Cases elsewhere support the proposition. Arkansas Power & Light Co. v. Hubbard, 181 Ark. 886, 28 S. W. (2d) 710; Aljoe v. Penn. Cent. Light & Power Co. 281 Pa. 368, 126 A. 759; cf. Elias v. Mayor of New Iberia, 137 La. 691, 69 So. 141. For discussion, see 23 Minn. L. Rev. 643.

Gustaf must be deemed to have appreciated, as a reasonable man in his community would have, that the wires were objects of danger to him and also that contact with them was likely to produce injury or death. And as a practical matter, it seems extremely unreasonable to consider Gustaf as ignorant of these facts. With how much reason could it be said that a youth of his age, training, and knowledge was completely oblivious that there was danger from electricity and contact with it?

Remaining yet for consideration is whether Gustaf acted as a reasonably prudent man under the circumstances. There is no

doubt that plaintiff's case recommends itself strongly to sympathy. Still, if contributory negligence must be spelled from Gustaf's conduct, there cannot be recovery.

In view of the circumstances, it must be held as a matter of law that a reasonable man would not have cut a tree so that it would come within the danger area. The tree could have been easily undercut so that it would fall in a different direction, in which case all threat from the wires would have been eliminated. The trouble of such a precaution is so slight compared to the risk of cutting it in the general direction of the wires that it must be held as a matter of law that the inconvenience would not deter a reasonable man. Whether we accept plaintiff's version that the tree was felled at an angle of 45 degrees or defendant's view, the result must be the same. The physical fact is that the tree either struck the wire or came within three and one-half inches of it. In either event, there is a clear inference that, however Gustaf may have hoped to miss the wires, the tree was cut in their general direction and under circumstances which clearly indicate there was danger of its coming into contact with the wires if its fall was not precisely where he wished it to be.

It is not material whether Gustaf did or did not know that the current could jump the three and one-half inches. If the tree came that close but did not strike the wires, the only factor in such a result was chance. The fact remains that the tree was cut in such a manner that it came within the general area of danger. The tree, even when at an angle, rested on the fence directly below the outer wire when its fall was completed.

Gustaf was confronted with the imposing task of judging the arc of a falling tree's top and estimating the height of the wires and the tree. There were many foreseeable events which could detract the tree from the proposed course, including the fact that unless cut expertly it was not likely to follow the path designed. Under such circumstances, granting the mathematical calculations set out in plaintiff's brief, can it be said that a reasonable man would cut so that the tree would fall in the general direction of,

274

and foreseeably likely to go near or fall into, such a highly dangerous instrumentality? There was no assurance that the manner selected would protect him from danger. Actually there was simply a complete failure on the part of Gustaf to heed the danger to which his conduct exposed him, for it was foreseeable that there might be a deviation of the tree from the proposed course with the complications resulting from such an event. The evidence is conclusive, and therefore compelling, that Gustaf was negligent as a matter of law.

Plaintiff relies upon the proposition that there is a presumption of due care in favor of a decedent. Many of our decisions so hold. Theisen v. Minnesota Power & Light Co. 200 Minn. 515, 274 N. W. 617; 2 Dunnell, Minn. Dig. (2 ed. & Supps.) § 2616. Since defendant has the burden of proof on contributory negligence, it is perhaps difficult to understand precisely how this presumption operates in favor of the plaintiff, who has not the burden to sustain on this point. However, the evidence establishes Gustaf's want of due care, and the burden of proof imposed has been sustained.

The judgment appealed from is affirmed.

