TEXAS UTILITIES ELECTRIC
COMPANY, Petitioner,

v.

Jackie Byrum TIMMONS, individually and
as representative of the Estate of Billy
Edwin Byrum, deceased, Respondent.

No. 96–0247.

Supreme Court of Texas.

Argued Oct. 3, 1996.

Decided June 20, 1997.

Joann N. Wilkins, Kevin John Croy, Dallas, for Petitioner.

Brenda Jeffers, R. Travis Miller, Dallas, for Respondent.

HECHT, Justice, delivered the opinion of the Court, joined by PHILLIPS, Chief Justice, CORNYN, ENOCH, OWEN, BAKER and ABBOTT, Justices.

The sole question in this case is whether, as a matter of law, a 90–foot electric transmission tower is an attractive nuisance to a 14–year–old boy. The district court answered no, granting summary judgment for the defendant. The court of appeals answered yes. 917 S.W.2d 84. We agree with the district court.

After spending the evening drinking beer and malt liquor at a friend's house, Billy Edwin Byrum, age 14, walked outside and down the street about half a block to a utility tower and began to climb it. The tower is owned by Texas Utilities Electric Company. It was built in 1913 and is over 90 feet tall. The tower has four vertical sides, each criss-crossed by metal braces forming large "X" patterns from the ground to the top. At the top is a 69 kv electric transmission line.

There is no ladder up the tower, but it can be climbed by means of the diagonal braces on each side. Years ago Texas Utilities erected a barricade around the tower 12–½ feet above the ground, consisting of steel braces protruding 17–19 inches from each of the four corners of the tower at a ninety degree angle, holding four strands of barbed wire, two to five inches apart, encircling the tower. Seven other strands of barbed wire are stretched across the interior of the tower. This barbed wire wall extending from the interior of the tower to about one and one-half feet beyond its sides is designed to prevent unauthorized persons from scaling the tower and coming near the power lines. Posted on one corner of the tower about five feet from the ground is a ten-inch-by-three-inch sign. Although portions were faded or illegible, and its gray background was the same color as the tower, the sign contained this warning in large, bold letters:

## KEEP AWAY

# DANGER

## WIRES HEAVILY ELECTRIFIED

The sign did not specifically warn of the danger of arcing. Despite this warning and the barricade, children sometimes climbed on the tower without Texas Utilities' knowledge and certainly without its permission. Billy was one of them. Texas Utilities never received a report of children climbing on the tower, although it was apparent from the condition of the barbed-wire barricade that children could get past it, and people in the neighborhood sometimes saw them playing on the tower. But no one who had seen children climbing on the tower had ever seen anyone near the top.

On the night in question, when Billy's friends realized he was gone, they went outside to look for him and heard him yelling from near the top of the tower. He appeared drunk. Billy's uncle and friends had

repeatedly warned him not to climb the tower, that it carried high voltage electric lines, and that he could be electrocuted. On this particular evening Billy's cousin and another boy repeatedly shouted to Billy for several minutes to come down because he might be electrocuted. Specifically, they said: "Come down before you get fried ... You're stupid going up there, you don't belong up there, and you know better." Billy acknowledged their warnings but remained at the top of the tower. At 1:18 a.m., Billy started to descend when there was a bright flash and all the lights in the area went out. Billy's body fell to the ground. Texas Utilities officials determined that Billy was killed not as a result of actually touching the electric lines but from approaching closely enough for electricity to arc into him. At the time of his death Billy's blood alcohol concentration was 0.10 gm/dl,

the legal standard for intoxication. TEX. PE-
NAL CODE §§ 49.01(1)(B), (2)(B).

Billy's mother, Jackie Byrum Timmons,
sued Texas Utilities for wrongful death, al-
leging that Texas Utilities was negligent in
failing to prevent children like Billy from
climbing on its tower. The trial court grant-
ed Texas Utilities' motion for summary judg-
ment. The court of appeals reversed, hold-
ing that fact questions subsisted regarding
whether Texas Utilities should have known
that children climbed on its tower, even
though it had no actual knowledge, and
whether Billy appreciated the danger of elec-
trical arcing, as distinguished from electrocu-
tion from touching electrical lines. 917
S.W.2d 84.

 The only duty a premises owner or
occupier owes a trespasser is not to injure
him willfully, wantonly, or through gross
negligence. *Burton Constr. & Shipbuilding
Co. v. Broussard*, 154 Tex. 50, 273 S.W.2d
598, 603 (1954). *See also* RESTATEMENT
(SECOND) OF TORTS § 333 (1965). But as to
invitees, a premises owner or occupier must
"use *ordinary care* to reduce or eliminate an
unreasonable risk of harm created by a
premises condition of which the owner is or
reasonably should be aware." *State Dept. of
Highways & Public Transp. v. Payne*, 838
S.W.2d 235, 237 (Tex.1992). Had Billy been
an adult, he would have been a trespasser on
Texas Utilities' tower, and since Texas Utili-
ties did not injure him willfully, it could not
be liable for his accident.

 However, "when children of tender
years [come] upon the premises by virtue of
their unusual attractiveness, the legal effect
[is] that of an implied invitation to do so.
Such child [is] regarded, not as a trespasser,
but as being rightfully on the premises."
*Banker v. McLaughlin*, 146 Tex. 434, 208
S.W.2d 843, 847 (1948). This is the doctrine
of attractive nuisance. It originally devel-
oped in so-called "turntable cases" where
young children were injured playing on rail-
road turntables which seemed especially at-
tractive playgrounds, the dangers of which
children did not appreciate. *See, e.g., (Sioux
City & Pac.) Railroad Co. v. Stout*, 84 U.S.
(17 Wall.) 657, 21 L.Ed. 745 (1873); *Evansich
v. Gulf, C. & S.F. R'y*, 57 Tex. 123 (1882).

The doctrine has since been extended to
other situations, as we explained in *Banker*:

"The theory of liability under the attrac-
tive nuisance doctrine is that, where the
owner maintains a device or machinery on
his premises of such an unusually attrac-
tive nature as to be especially alluring to
children of tender years, *he thereby impli-
edly invites such children to come upon
his premises, and, by reason of such invi-
tation, they are relieved* from being
classed as trespassers, but are in the atti-
tude *of being rightfully on the premises.*
Under such circumstances, the law places
upon the owner of such machinery or de-
vice the *duty of exercising ordinary care*
to keep such machinery in reasonably safe
condition for their protection, if the *facts
are such as to raise the issue that the
owner knew, or in the exercise of ordinary
care ought to have known, that such* chil-
dren were likely or would probably be
attracted by the machinery, and thus be
drawn to the premises by such attraction."
(Emphasis ours.)

The "attractive-nuisance", or so-called
turntable doctrine, is applicable to cases
involving different dangerous instrumen-
talities and conditions on the premises.

208 S.W.2d at 847–848. When the attractive
nuisance doctrine applies, the owner or occu-
pier of premises owes a trespassing child the
same duty as an invitee.

Nearly fifty years ago, in *Banker*, we
adopted the statement of the attractive nui-
sance doctrine found in section 339 of the
Restatement of Torts. *Id.* at 847. *See Ea-
ton v. R.B. George Inv., Inc.*, 152 Tex. 523,
260 S.W.2d 587, 589–91 (1953); *Massie v.
Copeland*, 149 Tex. 319, 233 S.W.2d 449, 451–
52 (1950). Section 339 of the Restatement
(Second) of Torts is changed slightly from its
predecessor, but we believe it still correctly
states the doctrine as follows:

A possessor of land is subject to liability
for physical harm to children trespassing
thereon caused by an artificial condition
upon the land if

(a) the place where the condition exists
is one upon which the possessor knows or

has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

RESTATEMENT (SECOND) OF TORTS § 339 (1965). We focus on the requirement of paragraph (c).

 In the present case, Timmons concedes, as she must, that Billy realized that climbing the tower was dangerous. His friends repeatedly warned him not to climb it, and Texas Utilities erected a barricade to prevent him from climbing it. Billy knew the electrical lines were dangerous. Texas Utilities' sign posted at the foot of the tower warned him to keep away. His friends admonished him the evening of the accident, as they had numerous times before, that he could be electrocuted. Even without such express warnings, anyone as old as Billy is charged "with the knowledge that electric wires are ordinarily dangerous; that they should be avoided wherever possible ... and that it is dangerous to come in close proximity to them." *Cloud v. Houston Lighting & Power Co.*, 199 S.W.2d 260, 262 (Tex.Civ. App.—Galveston 1947, writ ref'd n.r.e).

Timmons herself warned Billy of the danger of touching electric lines, but she contends that neither she nor Billy knew that electricity could arc from a line into a nearby object that was not touching the line. She argues that even though Billy knew the risks involved in climbing the tower and touching the lines, he did not know the risk of simply being near the lines.

Whether the fact that electricity can arc is known to 14–year–olds, or to older persons for that matter, is debatable. In 1922, the Texas Commission of Appeals observed:

> The public knows that it is dangerous to touch a live wire, but very few know that there exists danger of death from this powerful current by near approach to the wire so charged, without actually coming in contact with the wire. Only those who are engaged in the business, and those who have stood beside some inanimate form whose scorched and burned flesh bears mute evidence to its tremendous power, know this.

*McCoy v. Texas Power & Light Co.*, 239 S.W. 1105, 1110 (Tex. Com. App.1922, judgm't adopted). *See Klingensmith v. Scioto Valley Traction Co.*, 18 Ohio App. 290 (1924), cited in *Comment Note, Age and Mentality of Child as Affecting Application of Attractive Nuisance Doctrine*, 16 A.L.R.3d 25, 100 (1967) (where 16–year–old boy was killed by arcing while climbing an electric tower, the court said that "if the dead boy knew of the possibility that disruptive discharges from high-voltage wires such as those upon the tower might cause death without contact with the wires, then he knew more of the qualities of electricity than any member of the court prior to the information obtained in [this] case."). In 1939, however, the Minnesota Supreme Court rejected the idea that an 18–year–old did not know of arcing, saying simply that "[t]he danger of electrical energy is a matter of common knowledge." *Peterson v. Minnesota Power & Light Co.*, 206 Minn. 268, 288 N.W. 588 (1939). In 1956 the Pennsylvania Supreme Court stated that whether an 11–year–old boy realized the risk of arcing could be a fact issue. *Dugan v. Pennsylvania R.R. Co.*, 387 Pa. 25, 127 A.2d 343, 345–346 (1956).

Resolving this debate is not necessary to deciding the present case. This Court, like several others, has refused to apply the attractive nuisance doctrine to a young person injured by electrical arcing who realized the risk of being near electrical wires, even if he was not aware of arcing. In *Texas Power & Light Co. v. Burt*, 104 S.W.2d 941, 942 (Tex.

Civ.App.—Waco 1937, writ ref'd), an 18–year–old boy climbed 50 feet up an electric tower and out onto a crossbar, where he was struck by an arc from a nearby 61 kv line. The tower had two ladders made of spikes extending from corner posts. We held as a matter of law that the boy realized the risk of injury. We stated:

[C]onsidering the manner in which this tower was constructed and the natural and apparent danger that would have to be overcome before one could reach the zone where he might be injured by the electric current, it is unreasonable to assume that a child young enough to be possessed of such childish impulses as is contemplated by the attractive nuisance doctrine, would have the courage to climb the tower on the spike ladder far enough to encounter the danger here contemplated.

We are also of the opinion that the injured boy was not of such tender age as to bring him within the attractive nuisance doctrine.... He knew that it was dangerous to touch the wires and tried to avoid touching them, but he did not know that the current would jump from the wire to his body when he came in close proximity to the wire without touching the same. We are of the opinion that he was not so immature in judgment, experience, and intelligence as to be overpowered by childish impulses and led to believe, by the mere attractiveness of the tower, that he had a right to play on the tower and that he could do so without fear of danger.

*Id.* at 943 (citations omitted). In other words, the fact that the boy must have realized the risk of being near electric lines fifty feet in the air was enough to preclude application of the attractive nuisance doctrine, even if the boy did not realize the specific risk of arcing. Although there was no warning on the tower, we said:

If this boy, knowing that the tower carried high-tension wires and that it was dangerous to contact them, had the courage to climb the tower by means of a spike ladder to a distance of sixty feet, and, after seeing the wires, could, without trepidation, crawl immediately under and in close proximity to one of them on his hands and knees on a

bar forty-seven feet from the ground, and could then sit down on the end of the bar, swing his feet in the air, and view the surrounding country with complacency, it is hardly probable that an ordinary "danger" sign at the bottom of the ladder would have deterred him.

*Id.* Other courts have refused to apply the attractive nuisance doctrine to children injured or killed by arcing while climbing electric towers, despite the claim that the child did not realize the risk of arcing. *Kirschner v. Louisville Gas & Elec. Co.,* 743 S.W.2d 840, 842, 845 (Ky.1988) (involving a 15–year–old boy); *Peterson,* 288 N.W. at 590 (involving an 18–year–old boy); *James v. Wisconsin Power & Light Co.,* 266 Wis. 290, 63 N.W.2d 116, 117, 119–120 (1954) (involving a 15–year–old boy "mentally retarded about two or three years"); *Hashtani v. Duke Power Co.,* 578 F.2d 542, 543 (4th Cir.1978) (applying North Carolina law, and involving a 14–year–old boy). *See generally Comment Note,* 16 A.L.R.3d at 100–101; Annotation, *Liability for Injury of Child on Electric Transmission Tower or Pole,* 6 A.L.R.2d 754 (1949).

As these cases suggest, ignorance of arcing is not enough to satisfy the third element of the attractive nuisance doctrine, section 339(c) of the Restatement, if the child is aware of the dangers of electricity generally. The doctrine requires only that the child realize the risk "in coming within the area made dangerous" by the condition. RESTATEMENT (SECOND) OF TORTS § 339(c) (1965). As we reasoned in *Burt,* a child who puts himself in such close proximity to a known danger like a fifty-foot-high high-voltage electric line so as to risk severe harm cannot be heard to say that he did not realize the danger because he did not expect harm to occur exactly as it did.

The court of appeals concluded that the attractive nuisance doctrine could apply in this case based on this Court's decision in *Johns v. Fort Worth Power & Light Co.,* 30 S.W.2d 549 (Tex.Civ.App.—Fort Worth 1930, writ ref'd). There we applied the doctrine to a 15–year–old boy who climbed a 75–foot electric tower and was killed when he either touched or came near a high-voltage line.

The critical facts in that case, however, which are not present in the case before us, were that the tower had a ladder from the ground to the top made of spikes extending from one corner, and there were no signs or guards around the tower to warn children of the danger. *Id.* at 549–550. These same facts were crucial in *McCoy*, the other case on which the court of appeals relied. *McCoy* applied the attractive nuisance doctrine to a 14–year–old boy who climbed a high-voltage electric tower by the same kind of ladder as the boy in *Johns.* 239 S.W. at 1106–1107. And as in *Johns*, there were no signs or barricades to warn of the danger or discourage ascent. *Id.* at 1107.

We have characterized *Johns* and *McCoy* as "exceptional cases where unusual and highly deceptive instrumentalities were present." *Massie*, 233 S.W.2d at 454. The present case is different. Texas Utilities not only posted a sign warning everyone to keep away from the tower, it constructed a barricade to make it very difficult to climb the tower. Billy was well aware of the dangers of being near electricity, not to mention climbing 90 feet in the air. Moments before he was killed his friends were shouting that he could be electrocuted and that he should come down. Billy was warned to keep away from the tower altogether, not just the top few feet. Had he obeyed that warning, he would not have been killed.

Texas Utilities also argues, and Timmons acknowledged, that the attractive nuisance doctrine ordinarily does not apply to a normal 14–year–old. *Massie*, 233 S.W.2d at 453. However, Timmons asserts that the doctrine applies to Billy because he lacked the mental development ordinarily found in children of that age. *See* RESTATEMENT (SECOND) OF TORTS § 339, cmt. c (1965). Timmons alleges that Billy had difficulty functioning in a regular classroom, that he attended special education classes and made poor grades, and that he was immature and impulsive for a child his age. Like most courts, we decline to put an age limit on the beneficiaries of the attractive nuisance doctrine, although we acknowledge that "[i]n the great majority of the cases in which the [doctrine] has been applied, the plaintiff has been a child of not more than twelve years of age." *Id.* We also recognize "that in our present hazardous civilization some types of dangers have become common, which an immature adolescent may reasonably not appreciate, although an adult may be expected to do so." *Id.* The test is whether "the child is still too young to appreciate the danger". *Id.* We hold that Billy was not too young or immature to appreciate the danger of climbing a 90–foot tower containing high-voltage power lines. Further, Billy had been warned repeatedly, even the night of the accident, not to climb the tower and did so despite those warnings.

Billy's accident was tragic, but we cannot escape the conclusion that he realized the risk in climbing near the high-voltage lines. The district court correctly concluded, as a matter of law, that Timmons cannot invoke the attractive nuisance doctrine. Accordingly, the court of appeals' judgment is reversed and judgment is rendered that Timmons take nothing.

GONZALEZ, Justice, joined by SPECTOR, Justice, dissenting.

This is an appeal from a summary judgment. As such, we must view the evidence in the light most favorable to the non-movant. I disagree with the Court's opinion and judgment because it refuses to follow precedent. I would hold that the attractive-nuisance doctrine applies to this case and that Timmons has raised fact issues about whether Texas Utilities Electric Company breached its duty of reasonable care to the child. Accordingly, I would affirm the judgment of the court of appeals.

I

For the trial court's summary judgment to withstand Timmons's appeal, Texas Utilities must have conclusively disproved at least one element of her claim. *See Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 476 (Tex.1995). In determining whether summary judgment was proper, we must consider all evidence in the light most favorable to Timmons and resolve any doubts in her favor. *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

Before proceeding further, I will review the facts essential to deciding the present case under this standard.

The Texas Utilities tower Billy climbed is located on the corner of Hall and Davis Streets in a residential area of Hillsboro. It appears as follows:

Many families and children live nearby. The tower is easy to climb, and several other children in the area did so routinely before Billy's death. Billy himself had climbed it many times without injury.

Billy was fourteen years old when he was killed. He had difficulty functioning in a regular classroom and had attended special education classes for the previous three years. Even in special education classes, he made poor grades. On average, he was less intelligent than other children his age. Billy was aware of the general dangers associated with touching a power line. Although several people advised him against climbing the tower, no one told him about the possibility that electricity could arc or jump from the wire and harm him. Neither Billy's mother nor anyone with him the night of his death knew about the phenomenon of electrical arcing. As he climbed the tower, he came close to the power lines, but he did not touch them. A lethal jolt of electricity arced through the air and hit Billy as he began to descend.

## II

A landowner may be liable for injury to a trespassing child under the attractive-nuisance doctrine when the evidence shows that the defendant should have known or foreseen that the victim would be attracted to an artificial condition or instrumentality located on the property. *See Banker v. McLaughlin*, 146 Tex. 434, 208 S.W.2d 843, 847 (1948). Whether an artificial condition or instrumentality is an attractive nuisance is a question of law. *Massie v. Copeland*, 149 Tex. 319, 233 S.W.2d 449, 454 (1950). In determining whether the attractive-nuisance doctrine applies to a particular case, the reviewing court must consider the character of the danger and the age and maturity of the child. *Id.* at 453. The doctrine applies when the danger is latent, but not when it is patent or obvious. *See Stimpson v. Bartex Pipe Line Co.*, 120 Tex. 232, 36 S.W.2d 473, 476 (1931).

## A

At the outset, Texas Utilities contends that the court of appeals erred simply because Billy was too old to be protected by the attractive-nuisance doctrine. Although the Court disagrees, it does not fully explain its reasoning.

Texas Utilities relies on our decision in *Massie v. Copeland* to support its argument that the attractive-nuisance doctrine never applies to a fourteen-year-old child. *Massie* was a suit to recover damages for the drowning death of a fourteen-year-old boy. *Massie*, 233 S.W.2d at 449. The Court denied recovery based on the following holding:

It is our opinion that the dangers of swimming in the pond or pit of water described in the petition were open and patent to a normal, healthy and robust boy fourteen years of age, and that 'in the very nature of things' he was capable of understanding and appreciating the dangers.

. . . .

The foregoing conclusion, that the protection of the attractive nuisance doctrine is not to be extended to a normal boy fourteen years of age in such a case as this case, is well supported by the authorities.

*Id.* at 452–53.

At first blush, *Massie* would appear to support Texas Utilities' argument that attractive nuisance is unavailable to fourteen-year-olds. Upon a closer reading, however, it appears from our refusal to apply the doctrine to "such a case as this case" that we intended to limit the *Massie* decision to its facts. Thus, despite contrary interpretations, Texas law does not clearly establish age fourteen as a rigid boundary outside which a minor is not entitled to the benefit of the attractive-nuisance doctrine. Other jurisdictions are split on this issue, although the majority have refused to set arbitrary age limits, and the rules in states setting such fixed limits have been subjected to increasing criticism. *See Comment Note, Age and Mentality of Child as Affecting Application of Attractive Nuisance Doctrine*, 16 A.L.R.3D 25, 81 (1967 & Supp.1996); RESTATEMENT (SECOND) OF TORTS § 339 cmt. c (1965).

Even if age fourteen were the cutoff point, well-established authorities support an exception to that rule upon proof of "a lack of mental development . . . ordinarily found in children of that age." 65 C.J.S. *Negligence* § 63(86); *see Massie*, 233 S.W.2d at 453 (refusing to apply doctrine to "normal" fourteen-year-old boy). Under such circumstances, recovery is allowable "where the child is of high school age, ranging in a few instances as high as sixteen or seventeen years." RESTATEMENT (SECOND) OF TORTS § 339, cmt. c (1965). A rule allowing recovery to a child who lacks ordinary mental development and intellectual capacity is particularly appropriate in cases involving such a little-known, dormant, and latent instrumentality as electrical arcing. *See Massie*, 233 S.W.2d at 454 (citing *McCoy*, 239 S.W. at 1105; *Johns*, 30 S.W.2d at 549). Viewed in the light most favorable to Timmons, the summary judgment record raises a fact issue about whether Billy had the mental capacity of a normal fourteen-year-old boy. *See Massie*, 233 S.W.2d at 453; *Soledad v. Lara*, 762 S.W.2d 212, 214 (Tex.App.—El Paso 1988, no writ). The Court does not adequately address the mental-capacity issue before deciding that Billy was old enough and mature enough to appreciate the danger.

## B

Texas Utilities also asserts that, regardless of whether fourteen is the absolute age limit for attractive nuisance, the doctrine does not apply under the facts of this case. For the reasons explained below, this argument is without merit.

Since 1922, Texas courts have applied the attractive-nuisance doctrine to a fourteen-year-old child injured by electrical arcing while climbing an electric transmission tower. The Texas Commission of Appeals, in *McCoy v. Texas Power & Light Co.*, 239 S.W. 1105 (Tex. Comm'n App.1922, holding approved), was the first court in this state to consider the issue. In *McCoy*, the boy knew that power lines were dangerous, but like Billy, he was unaware that he could be harmed without actually touching the wires. *McCoy*, 239 S.W. at 1107. Nothing indicated that the boy climbed the tower for any purpose other than curiosity or adventure. Relying on several Texas authorities on attractive nuisance, the Commission of Appeals concluded that the factual allegations in the plaintiff's petition stated a cause of action against the defendant electric company and were sufficient to sustain the lawsuit against a general demurrer. *Id.* at 1108–10. In

imposing a duty of reasonable care on the defendant, the court stated:

> The public knows that it is dangerous to touch a live wire, but very few know that there exists danger of death from this powerful current by near approach to the wire so charged, without actually coming in contact with the wire. Only those who are engaged in the business, and those who have stood beside some inanimate form whose scorched and burned flesh bears mute evidence to its tremendous power, know this.

*Id.* at 1110. Our Court approved the Commission of Appeals' holding and adopted its judgment.

Eight years later, in *Johns v. Fort Worth Power & Light Co.,* 30 S.W.2d 549 (Tex.Civ. App.—Fort Worth 1930, writ ref'd), the court analyzed whether the attractive-nuisance doctrine applied to a fifteen-year-old boy who was electrocuted while climbing an electrical tower to retrieve a kite. The evidence in that case did not indicate whether the boy touched the wires or, like Billy, met his death by the obscure phenomenon of arcing. *Johns,* 30 S.W.2d at 551. Relying in part on *McCoy,* the appellate court reversed the trial court's directed verdict for the defendant. *Id.* at 557. In concluding that the trial court had properly submitted the case to the jury, the court stated:

> The fact [that] children had habitually played in the vicinity of and on this tower, and that such tower constitutes an attractive nuisance (see *McCoy v. Tex. Power & Light Co.* [Tex. Com.App.] 239 S.W. 1105), which was reasonably calculated to attract children to its vicinity, and had so attracted them for many years, was pleaded and sustained by the evidence. The tower was not only peculiarly attractive to boys of immature age by reason of its construction, but we think the fact that steps were placed thereon, so that boys could easily and conveniently climb it, made it more attractive, and we think that, under all the circumstances, the defendant should have anticipated that some boy would have climbed it, either for the purpose of extricating a kite, or for some other youthful purpose.

*Id.* This Court, by assigning *Johns* a "writ refused" notation, adopted the court of civil appeals' opinion and judgment as its own. *See* TEX.R.APP. P. 133(a).

The rule derived from *McCoy* and *Johns* is clear: as a matter of law, the attractive-nuisance doctrine imposes a duty on commercial electric companies to use reasonable care to protect a fourteen-year-old child from the dangers of electrical arcing. Nevertheless, the Court attempts to divert attention from these cases by concluding that, under *Texas Power & Light Co. v. Burt,* 104 S.W.2d 941 (Tex.Civ.App.—Waco 1937, writ ref'd), Billy need only have appreciated the general nature of electricity to be excluded from the doctrine's protection. I disagree.

In *Burt,* the plaintiff, age eighteen at the time, climbed the defendant's transmission tower to get a better view of the surrounding countryside. To reach the structure's upper portion, the plaintiff climbed one of two "ladders" made from steel spikes attached to corner posts. The ladders did not begin at ground level but about fourteen feet above it. *Burt,* 104 S.W.2d at 942. While descending the tower, the plaintiff passed within thirty inches of a power line, at which time he received a non-fatal shock without touching the wire. The plaintiff sued the defendant power company under an attractive-nuisance theory. A jury awarded damages, and the trial court rendered judgment on the verdict. *Id.* Without citing *McCoy* or *Johns,* the court of civil appeals reversed and rendered judgment for the defendant. The appellate court's opinion turns on two holdings: (1) that the tower was not attractive to children; and (2) that "the injured boy was not of such tender age as to bring him within the attractive nuisance doctrine." *Id.* at 943.

Based on factual distinctions, the *Burt* court's first holding is inapposite. There, the plaintiff climbed the first fourteen feet without a ladder or other similar means, whether such means were intended to facilitate climbing or not. In refusing to apply the attractive-nuisance doctrine, the court "consider[ed] the manner in which this tower was constructed and the natural and apparent danger that would have to be overcome before one could reach the zone where he might

be injured by the electric current." *Burt,* 104 S.W.2d at 943. According to the summary judgment evidence in this case, Billy faced no similar obstacle in scaling the Texas Utilities tower. Children could climb it with ease from the ground up, despite a barbed-wire barrier. Because of these factual differences, the *Burt* court's conclusion that the tower was not attractive to children does not govern here. The basic rule of *McCoy* and *Johns* still applies.

In its second holding, the *Burt* court merely refused to apply the attractive-nuisance doctrine to a person eighteen years of age. Importantly, the court did not rely on an arbitrary age limit in reaching its conclusion. *See Burt,* 104 S.W.2d at 943. Whether correct or not, the court's resolution of the age issue was essential to its judgment. But it does not affect the outcome here because Billy was only fourteen years old when he died.

Thus, while *Burt* is a "writ refused" case, it does not overrule *McCoy* and *Johns,* as it can be read consistently with them. *Burt* does not hold, as the Court suggests, that the attractive-nuisance doctrine does not apply "to a young person injured by electrical arcing who realized the risk of being near electrical wires, even if he was not aware of arcing." 947 S.W.2d 195.

The Court also attempts to distinguish *McCoy* and *Johns* based on what it says are three "critical" facts. In both of those cases, (1) a "ladder" made of foot pegs attached to a corner post extended from the ground to the top of the structure, (2) no warning signs were posted at the tower's base, and (3) no barricade inhibited access to the area near the power lines. These facts are not essential to a determination that an electrical tower is an attractive nuisance.

Although the Texas Utilities tower did not have a ladder similar to the foot pegs found in *McCoy* and *Johns,* it was constructed in such a manner that children could easily climb it. *See supra* Figure 1. David Coughanor, Billy's cousin, testified by affidavit that the tower was as "easy [to climb] as monkey bars.... That's basically what [the tower] was to all the kids around there, a jungle gym." By scaling up the criss-crossed support beams, Billy was able to climb the tower as easily as if a ladder had been there.

Moreover, the Court's emphasis on the warning sign posted on one corner of the tower is misleading. According to the summary judgment record, the sign was located in back of the tower and away from most foot traffic. As Figure 2 indicates, it was much smaller and harder to read than the Court's large, boldface depiction implies. With a total size of three by ten inches, the sign was not much larger than a dollar bill (as Figure 2 shows), and the warning portion itself was much smaller. Even still, as the Court acknowledges, parts of the sign were illegible, as its print was faded. The sign's gray background was the same color as the tower, making it even less noticeable. The sign warned only that the wires were heavily electrified. It did not warn that danger existed whether or not one touched the wires.

Furthermore, even though Texas Utilities had installed a steel and barbed-wire "barricade" on the tower, this device did not significantly hinder the neighborhood children who desired to climb above it. Coughanor testified that at least two ways of maneuvering around the barricade existed. The barbed wire holding the barricade together was loose from children doing just that. Timmons's expert testified that the guard was insufficient to accomplish its intended purpose. The expert also declared that a proper barricade would have prevented Billy and other children from scaling the tower.

Thus, viewed in the light most favorable to Timmons, the summary judgment evidence shows that the tower's construction and the ease with which it could be climbed made the structure particularly attractive to children. *See Johns,* 30 S.W.2d at 557. The factual distinctions the Court emphasizes make no meaningful difference for attractive-nuisance purposes. Without question, electrical arcing is a latent danger of which, even today, few people are aware.[1] *See Massie,* 233

---

1. While most persons, including children, know that electricity is dangerous, very few people outside the trade know about the arcing phenomenon. While certainly not dispositive or scienti-

S.W.2d at 454; *McCoy*, 239 S.W. at 1110. The focus in *McCoy* and *Johns* was on the dangerousness and deceptiveness of electrical arcing as seen through the eyes of a fourteen-year-old boy, not on the physical characteristics of the towers at issue. I am not convinced that these minor differences justify the Court's departure from established precedent.

### C

In 1948, this Court adopted the version of the attractive-nuisance doctrine articulated in section 339 of the *Restatement of Torts*. *See Banker*, 208 S.W.2d at 847. Since then, our Court has decided only two attractive-nuisance cases under the *Restatement* rule. *See Eaton v. R.B. George Invs., Inc.*, 152 Tex. 523, 260 S.W.2d 587, 589 (1953); *Massie*, 233 S.W.2d at 451–52. None of these three cases involve facts similar to those before us today.

Texas Utilities' principal argument and the Court's opinion each focus on the *Restatement*'s third element: whether Billy, because of his youth, did "not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it." *See* RESTATEMENT (SECOND) OF TORTS § 339 (1965); *Banker*, 208 S.W.2d at 847. Supported by its inaccurate characterization of *McCoy* and *Johns*, the Court determines that the *Restatement* precludes application of the attractive-nuisance doctrine under the facts of this case. I disagree.

In large part, our Court adopted section 339 to prevent defendants from escaping liability in attractive-nuisance cases simply by establishing that an artificial condition or instrumentality was not unusually attractive to children. *See Eaton*, 260 S.W.2d at 589. While *Banker* also clarified the elements of proof in an attractive-nuisance case, nowhere

in that opinion or in our two related writings since then did we express an intention to limit recovery in a manner inconsistent with existing common law. To accept the Court's position in the instant case, however, one must conclude that *Banker* overruled our previous determination that a fourteen-year-old child may recover when a utility company fails to use reasonable care to protect him from the dangers of electrical arcing. *See McCoy*, 239 S.W. at 1110; *Johns*, 30 S.W.2d at 557. A close reading of the *Banker* opinion shows that we did not do so. Immediately after adopting the *Restatement*, we cited *McCoy* as authority for overruling the petitioner's points of error. *See Banker*, 208 S.W.2d at 847. By relying on *McCoy*, *Banker* reaffirmed its holding. Therefore, the *McCoy/Johns* rule should remain intact today.

### III

As a matter of law, the attractive-nuisance doctrine applies to this case. Based upon Billy's age, intellectual capacity, and mental development, as well as the fact that electrical arcing is a serious, hidden danger of which most people are unaware, Texas Utilities failed to conclusively establish that Billy appreciated the risk involved in going near the power lines. For these reasons, I would affirm the judgment of the court of appeals. Accordingly, I dissent.

---

fic, an informal survey of our Court and its personnel confirmed my suspicion that very few people know about this phenomenon. I am not prepared to hold as a matter of law that the general public, much less a youngster with diminished mental capacity, is aware that just being close to electrical power lines can result in serious injury or death. *See Klingensmith v. Scioto Valley Traction Co.*, 18 Ohio App. 290 (1924) (stating that, "if the dead boy knew of the possibility that disruptive discharges from high-voltage wires such as those upon the tower might cause death without contact with the wires, then he knew more of the qualities of electricity than any member of the court prior to the information obtained in [this] case"), *in Comment Note, Age and Mentality of Child as Affecting Application of Attractive Nuisance Doctrine*, 16 A.L.R.3d 25, 100 (1967).