

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-17-00022-CV

M.C., INDIVIDUALLY AND AS NEXT
FRIEND OF J.C., A MINOR; E.P.,
INDIVIDUALLY AND AS NEXT
FRIEND OF A.P., A MINOR; AND
EACH ON BEHALF OF THE
ESTATE OF J.G., DECEDENT

APPELLANTS

V.

PANTEGO CAMP THURMAN, INC.

APPELLEE

----------

FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 017-269875-13

----------

## OPINION

----------

In the early morning hours following Christmas Day 2011, J.G.—who had been smoking marijuana and drinking heavily—walked with a female companion, Faith Yeh, through his neighbor's property, climbed over a four-foot-high wooden fence on which four "No Trespassing" signs were posted, and entered Camp

Thurman. The pair proceeded to climb a cargo net to a triangular platform located more than 20 feet above ground, where they began to kiss. After rebuking further advances, Yeh turned and started to retreat back down from the platform. At that point, she heard J.G.'s body hit the ground below.

Two years later, M.C. and E.P. (Appellants)—the mothers of J.G.'s two children—filed a wrongful death action against Appellee Pantego Camp Thurman, Inc. (Pantego)[1] on behalf of themselves and J.G.'s two young sons, alleging that Pantego's negligence caused J.G. to fall to his death. After the jury rendered a verdict in Pantego's favor, the trial court signed a take-nothing judgment. Appellants now bring this appeal, arguing in three issues that the trial court erred. We affirm.

## Background

Camp Thurman is located on a 12.3-acre site in Pantego. In the summer months, Camp Thurman serves as a children's camp. During the remainder of the year, the site is used for adult team-building workshops.

The platform from which J.G. fell—the "Wild Woozy"—was one element of a challenge course located on the property and consisted of two 22- to 30-foot

---

[1]Appellants also sued Jim Rose, who was at that time the executive director of Camp Thurman, in his individual capacity; the town of Pantego; FAIC Nonprofit Foundation; and Pantego Bible Church. Those parties were dismissed from the case and are not part of this appeal.

tall wooden platforms connected to each other by two cables.[2]  One platform was triangular in shape, the other was rectangular.   The triangular platform was accessible in two ways—by a cargo net reaching from the ground to one side of the platform, and by a spiral staircase located on another side of the platform. The spiral staircase was encased by a six-to-eight-foot-high wrought-iron fence with a door that was locked when the element was not in use.  Two signs on the element warned, "Coaster's Wild Woozy, extreme danger," and "WARNING! Equipment and area are only to be used with proper supervision!"

When Yeh heard J.G.'s body hit the ground, she raced down the spiral staircase, only to realize when she reached the bottom that the door to the staircase was locked, forcing her to go back up to the platform and climb down the cargo net.  By the time she reached J.G., his body was not moving.  Yeh called 911 and paramedics pronounced J.G. dead at the scene.

At trial, evidence was presented of J.G.'s struggles with alcoholism, drug use, and depression.  His girlfriend at the time of his death, Ashleigh Miller, described him as a heavy drinker who drank daily "until he [was] drunk."  She also testified that J.G. smoked marijuana at least three times a day.[3]  According to Miller, J.G. sometimes spoke of killing himself and of his desire to "disappear

---

[2]Campers who participated in this element wore harnesses attached to a belay system for safety.

[3]Postmortem blood and urine analyses showed that J.G.'s blood alcohol content ranged from .198 to .236 and his urine was positive for the presence of marijuana at the time of his death.

3

from the world." Although he had two young sons, he rarely saw them and, at the time of his death, J.G. owed back child support to both Appellants.

One of the Appellants testified that the platform of the Wild Woozy was J.G.'s "secret spot," a place where he went when he was feeling depressed and needed to think. J.G.'s roommate and girlfriend also confirmed that J.G. had visited the Wild Woozy multiple times prior to the night he died.

The jury found that J.G. had trespassed onto Camp Thurman and that his death was not caused by Pantego's gross negligence.[4]

**Discussion**

Appellants bring three issues in this appeal. The first two issues relate to the trial court's failure to take judicial notice of and to admit into evidence certain provisions of the Texas Administrative Code relating to safety standards for youth camps. In their third issue, Appellants argue that the jury's verdict was against the great weight and preponderance of the evidence.

**I. Administrative code provisions**

During the trial, Appellants' counsel attempted to introduce exhibit 18, a 34-page printout of sections 265.11 through 265.29 of the Texas Administrative Code, portions of which relate to safety standards for youth camps. *See* Tex.

---

[4]The jury was instructed that Pantego's duty to J.G. as a trespasser with respect to the condition of the Camp Thurman premises was to act without gross negligence. *See* Tex. Civ. Prac. & Rem. Code Ann. § 75.007(b) (West Supp. 2017) (providing that a landowner owes a duty to refrain from injuring a trespasser "wilfully, wantonly, or through gross negligence").

4

Admin. Code Ann. §§ 265.11–.29. Pantego's counsel objected that Appellants had failed to reveal that they planned to introduce evidence of those sections of the administrative code in response to discovery.[5] The trial court sustained the objection and did not admit the code provisions into evidence. Later, Appellants' counsel again offered exhibit 18, arguing that Pantego would not be unfairly surprised by its admission because the Appellants had mentioned one of the administrative code provisions—section 265.17—in several requests for production that Appellants had served on Pantego. The trial court did not change its ruling.

## A. Judicial Notice

In Appellants' first issue, they argue that the trial court erred by "[r]efusing to take judicial notice" of the proffered sections of chapter 265 of the administrative code. This argument is fundamentally flawed because a thorough review of the record reveals that the trial court was never asked to take judicial notice of this code provision. Instead, Appellants offered into evidence a printout of several sections of the administrative code, and the trial court sustained Pantego's objection to this evidence. Offering a document into evidence is not the same as making a request for the taking of judicial notice. And as no request

---

[5]Pantego's counsel identified at least one interrogatory that Pantego had served on Appellants requesting that they identify any rules, regulations, policies, guidelines, or industry standards that Appellants alleged Pantego had violated with respect to the premises or the accident. In addition, Pantego's counsel referenced "companion" requests for production that sought similar information.

5

was made that the court take judicial notice, it can hardly be said that the trial court "refused" to do so. Accordingly, this portion of Appellants' first issue is overruled.

Alternatively, Appellants argue that the trial court had a mandatory duty, even in the absence of such a request, to take judicial notice of administrative agency regulations. This is correct. *See* Tex. Gov't Code Ann. § 2002.054 (West 2016) (providing that state agency rules published in the administrative code "are to be judicially noticed"); *Eckmann v. Des Rosiers*, 940 S.W.2d 394, 399 (Tex. App.—Austin 1997, no pet.) (holding that the trial court has a mandatory duty, even in the absence of a request by a party, to take judicial notice of administrative agency regulations).

The problem here, however, is that this record does not indicate whether the trial court did or did not judicially notice any portion of the administrative code. And while the trial court had a statutory obligation to take notice of agency rules published in the administrative code, error preservation for failure to do so must be supported by more than a silent record. In order to preserve error, Appellants were required to secure an adverse ruling. *See* Tex. R. App. P. 33.1(a)(2) (providing that, in order to preserve a complaint for review, the trial court must have ruled or refused to rule).

At no point during this trial did Appellants establish that the trial court did not take judicial notice, because at no point during trial did Appellants make any request or inquiry related to the taking of judicial notice. At the two junctures

6

during trial where this issue would likely present itself—during the jury charge conference and in the discussions related to the jury note[6] during deliberations— Appellants remained mute on this point. Appellants did not request a jury instruction of the standard of care based upon any administrative code section, nor did Appellants request that a supplemental charge be given in response to the jury's note requesting advice regarding laws applicable to challenge courses. *See, e.g.*, *Duncan v. First Tex. Homes*, 464 S.W.3d 8, 19–20 (Tex. App.—Fort Worth 2015, pet. denied) (explaining that Occupational Safety and Health Administration (OSHA) standards are relevant to determination of whether a condition posed an unreasonable risk of harm in premises defect case); *see also* Anthony Tarricone, *Evidentiary Use of Regulations, Codes, Customs, and Standards*, 1 Ann.2004 ATLA-CLE 867 (2004) (discussing the "competitive edge" that may be gained by plaintiffs by identifying and utilizing written standards of care provided in sources such as administrative rules and regulations). By failing to do so, Appellants have waived any alleged error for review. *See* Tex. R. Civ. P. 278 ("Failure to submit a definition or instruction shall not be deemed a ground

---

[6]The jury asked, "Are there any laws that require a certain amount of signs in [T]exas or any rules and regulation[s] for [c]amps such as Camp Thurman pertaining to ropes courses or towers similar to what we have seen pictures of?"

When the trial court presented the note to the parties, Appellants' attorney expressed her belief that the trial court could not give additional information to the jury. The trial court responded to the jury as follows: "The Court, under the law, is not permitted to answer the question that you have presented. Please refer to and follow the instructions already given you and continue your deliberations."

7

for reversal of the judgment unless a substantially correct definition or instruction has been requested in writing and tendered by the party complaining of the judgment."); *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992) (op. on reh'g) ("There should be but one test for determining if a party has preserved error in the jury charge, and that is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling."). Because on the record before us, any complaint as to the failure of the trial court to take judicial notice of administrative agency regulations was not preserved for review, we overrule this remaining portion of Appellants' first issue.

## B. Exclusion of exhibit 18

In Appellants' second issue, they argue that the trial court erred by refusing to admit exhibit 18. The trial court based its decision in part on Appellants' failure to plead any reliance on the proffered code provisions and their "failure to put Defendants on notice of the specific rules and regulations." The trial court also found that Appellants had not established good cause for failing to do so and noted that there were no pleadings to support their admission. *See* Tex. R. Civ. P. 47 (requiring the plaintiff to give the defendant fair notice of its claim in the petition); 194.2(c) (requiring disclosure of the legal theories and factual bases of the opponent's claims).

While we may disagree with the trial court's stated rationale, *cf. Dougherty v. S. Pac. Transp. Co.*, 772 S.W.2d 81, 83 (Tex. 1989) (holding failure to plead a statute or regulation is not a proper ground for a trial court's refusal to judicially

8

notice it upon proper request of a party under rule of evidence 202), it does not necessarily follow that the trial court abused its decision by excluding exhibit 18. In reviewing that decision for an abuse of discretion, we must uphold it if there is any legitimate basis in the record for the ruling. *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

Exhibit 18 is a 34-page printout of an entire subchapter of the administrative code. Tex. Admin. Code Ann. §§ 265.11–.29 (comprising subchapter B, titled "Texas Youth Camps Safety and Health," of chapter 265 of the administrative code). The vast majority of this subchapter—and therefore the exhibit—has no apparent relevance to the facts of this case. For instance, the subchapter addresses the following topics:

- Maintenance and operation of primitive campsites, including provision of drinking water and toilet facilities. *Id.* § 265.14.

- Waterfront safety. *Id.* § 265.16.

- Safety requirements for firearm, pellet gun, archery, and horseback riding. *Id.* § 265.17(a)–(g).

- Fire prevention. *Id.* § 265.18.

- Maintenance and safe use of motor vehicles. *Id.* § 265.19.

- Location and vaccination of farm and domestic animals. *Id.* § 265.20.

- Insect and rodent control. *Id.* § 265.21.

- Prohibition of nudity by campers or staff. *Id.* § 265.22.

- How to obtain or renew a license. *Id.* § 265.23–.24.

- Licensing fees. *Id.* § 265.28.

9

Appellants have never explained, either to the trial court or this court, how topics such as waterfront safety, fire prevention, vaccination of farm animals, or prohibitions of nudity could possibly aid the jury in determining whether Pantego was negligent and whether any such negligence contributed to J.G.'s death. Such provisions do not appear to be at all relevant, and the introduction of these matters into evidence would more likely serve to confuse or mislead the jury than assist the jury in deciding the facts of this case. *See* Tex. R. Evid. 403 (providing that the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of, among other things, confusing the issues or misleading the jury). Nor does the record indicate that Appellants attempted to redact or otherwise remove the irrelevant portions from exhibit 18 either before offering it or after the trial court sustained Pantego's objections. *Cf. Kratz v. Exxon Corp.*, 890 S.W.2d 899, 905–06 (Tex. App.—El Paso 1994, no pet.) (police accident report was admissible once witnesses' hearsay statements were redacted).

Even if we were to assume—which we do not—that it would ever be appropriate to admit into evidence a printout of statutory or other legal authority, given the irrelevant content contained in exhibit 18, the trial court was well within its discretion to exclude it. We therefore overrule Appellants' second issue.

## II. The jury's verdict

In their third and final issue, Appellants contend that the jury's failure to find that Pantego's gross negligence proximately caused J.G.'s death was against the great weight and preponderance of the evidence.

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). When, as here, the party with the burden of proof appeals from a *failure to find*, the party must show that the failure to find is against the great weight and preponderance of the credible evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 651 (Tex. 1988); *see Gonzalez v. McAllen Med. Ctr., Inc.*, 195 S.W.3d 680, 681–82 (Tex. 2006).

Appellants do not challenge the jury's finding that J.G. was a trespasser. As a trespasser, J.G. was owed a duty by Pantego not to injure him willfully, wantonly, or through gross negligence. *See* Tex. Civ. Prac. & Rem. Code Ann. § 75.007(b); *Tex. Utils. Elec. Co. v. Timmons*, 947 S.W.2d 191, 193 (Tex. 1997).

11

In this case, Appellants contended that J.G.'s death was caused by Pantego's gross negligence.

Gross negligence requires "an extreme degree of risk, considering the probability and magnitude of the potential harm to others[,] . . . of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others."  Tex. Civ. Prac. & Rem. Code Ann. § 41.001(11) (West Supp. 2017); *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012).  Gross negligence represents a significantly higher threshold than the "objective reasonable person" test used for simple negligence.  *Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 325–26 (Tex. 1993).  As explained by the supreme court, "[a]n act or omission that is merely thoughtless, careless, or not inordinately risky cannot be grossly negligent.  Only if the defendant's act or omission is unjustifiable and likely to cause serious harm can it be grossly negligent."  *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 22 (Tex. 1994) (op. on reh'g) (footnote omitted), *superseded on other grounds by statute as stated in Waldrip*, 380 S.W.3d at 140.  Furthermore, to rise to the level of committing gross negligence, the actor must also have actual, subjective awareness of an extreme risk—not a "remote possibility of injury or even a high probability of minor harm, but rather 'the likelihood of serious injury' to the plaintiff."  *Id.*  In sum, the evidence must demonstrate not only the existence of an extreme degree of risk, but that Pantego knew about the peril

and did not care. *See id.*; *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998).

Appellants argue that Pantego was grossly negligent because (1) Pantego knew the Wild Woozy was inherently dangerous; (2) Pantego was aware of previous incidents of trespassers on the Camp Thurman property; (3) Pantego did not erect a more substantial fence than the four-foot-high wooden fence behind J.G's neighbor's property; and (4) Pantego left the cargo net accessible when the Wild Woozy was not in use.

But even if this is evidence of gross negligence, Pantego introduced evidence that tended to negate gross negligence. For example, the evidence showed that Pantego was aware of, at most, only two trespassing incidents, neither of which involved the high ropes course in general or the Wild Woozy specifically. The record shows no evidence of any prior falls or other injuries sustained from use of the Wild Woozy element. And, although the fence on J.G.'s neighbor's property was only four feet tall, the jury could have also considered evidence that Camp Thurman was fenced in on all sides, with locked gates and numerous "NO TRESPASSING" signs, and that at the point of J.G's entry he was faced with not just one, but four of these signs. Finally, Pantego had placed warning signs on the Wild Woozy advising of its potential danger and had encased the spiral staircase with a locked, wrought-iron fence to prevent easy access. While J.G. had disregarded all of these signs and warnings on

13

numerous occasions, there is no evidence in this record that Pantego knew of J.G.'s—or anyone else's—proclivity to trespass upon its property.

The jury was tasked with weighing this evidence, and we cannot say that the jury's finding that Pantego's actions did not rise to the level of gross negligence was so against the great weight and preponderance of the evidence as to be "manifestly unjust." *In re King's Estate*, 244 S.W.2d 660, 664–65 (Tex. 1951); *see also Fort Worth Hotel Ltd. P'ship v. Enserch Corp.*, 977 S.W.2d 746, 755 (Tex. App.—Fort Worth 1998, no writ) (holding jury's finding of no gross negligence was not against the great weight and preponderance of the evidence in case for damage caused by gas line explosion). Accordingly, we overrule Appellants' third issue.

## Conclusion

Having overruled each of Appellants' three issues, we affirm the trial court's judgment.

/s/ Bonnie Sudderth

BONNIE SUDDERTH
CHIEF JUSTICE

PANEL:  SUDDERTH, C.J.; KERR and PITTMAN, JJ.

DELIVERED:  February 22, 2018

14